UNIDYNE CORPORATION, Plaintiff,

v.

AEROLINEAS ARGENTINAS and Argentine Naval Commission, Defendants.

Civ. A. No. 83–504–N.

United States District Court, E.D. Virginia, Norfolk Division.

March 7, 1984.

See also 590 F.Supp. 391.

Ronald M. Gates, John W. McCormick, Boyd, Payne, Gates & Farthing, Norfolk, Va., for plaintiff.

Moffett B. Roller, Condon & Forsyth, New York City, for Aerolineas Argentinas.

Joseph M. Young, Reynolds, Smith & Winters, Norfolk, Va., for Argentine Naval Com'n.

## ORDER

DOUMAR, District Judge.

This matter arises on the motion of the Argentine Naval Commission to dismiss the above-styled action asserting that this Court lacks both subject matter and in personam jurisdiction over the defendant pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq.* (1977). For the reasons stated below, the defendant's motion to dismiss is GRANTED.

The plaintiff, Unidyne Corporation, alleges in the complaint at hand that a C–4 Ionosounde Pulse Radar Unit, a sophisticated instrument used to test levels of the ionosphere, owned by the Argentine Navy

was shipped to Unidyne for repair but was damaged in transit. Pursuant to a repair contract, the Argentine Navy Procurement Office shipped the C–4 Recorder from Buenos Aires, Argentina, to Unidyne's Virginia plant via Aerolineas Argentinas on July 8, 1981. Because Aerolineas Argentinas does not fly into Virginia, the C–4 Recorder was transferred to Trans World Airlines, Inc. (TWA) at the John F. Kennedy International Airport in New York under regular interline procedures. TWA transported the C–4 Recorder to Dulles Airport in Virginia, and on July 28, 1981, the unit was transferred a second time to Groome Transportation, Inc. who carried the cargo by truck to the plaintiff's address in Norfolk, arriving on July 29, 1981. Without dispute, the C–4 Recorder arrived in a seriously damaged condition.

In a subsequent telex message, Unidyne notified the Argentine Naval Office in Buenos Aires of the damage and requested that the Argentine government appoint Unidyne as a claims agent to process any prospective insurance claim against the carriers. On August 27, 1981, an Argentine Naval Commission ("ANC") officer, Alcides V. Cordi, made a visual inspection of the C–4 Recorder and, according to the plaintiff, instructed Unidyne to perform the repairs necessary to resolve the damage claim. On September 3, 1981, the Argentine Navy, not ANC, appointed Unidyne as its official claims agent. Thereafter, Unidyne entered into negotiations with the airlines, albeit unsuccessfully.

On July 29, 1983, Unidyne filed the instant action naming ANC and Aerolineas Argentinas as defendants. The complaint includes three counts. Only Count One, asserting a quantum meruit theory, is applicable against ANC. In essence, Unidyne claims that ANC induced the plaintiff to make repairs worth $43,600 to the C–4 Unit and that ANC was unjustly enriched thereby. Service was effected by mailing a copy of the summons and complaint to the Virginia Secretary of the Commonwealth pursuant to § 8.01–329 of the Virginia Code (1977 Repl.Vol. and 1983 Supp.). The Secretary of the Commonwealth acknowledged that service was made on August 8, 1983, and a copy of the summons and other papers filed were forwarded by certified mail to the ANC which were received by Captain Juan A. Holle on August 9, 1983.

ANC raises two grounds for dismissal. First, the defendant asserts that this Court has no in personam jurisdiction over ANC because service was improper and, further, that ANC lacks sufficient minimum contacts with the Commonwealth of Virginia to satisfy the constitutional guarantee of due process. Secondly, ANC claims it is immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. The Act provides that foreign states are generally immune from suits in the United States unless a particular exception applies. Here, the defendant, ANC, contends that they do not fit within any exception because they have not engaged in any commercial activity within the United States in connection with the instant action.

## IN PERSONAM JURISDICTION

Jurisdiction in this action is predicated on 28 U.S.C. § 1330 which provides that district courts shall have subject matter jurisdiction over any nonjury civil action against a *foreign state* for in personam relief if the foreign state is not entitled to immunity. In personam jurisdiction is established only if proper service is effected under 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). Therefore, in any nonjury civil action against a foreign state seeking in personam relief proper service as provided in a special statute, § 1608, is a jurisdictional prerequisite.

Initially, this Court must determine whether ANC is a foreign state. Section 1603 of Title 28 defines this term as follows:

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title [28 USC § 1608], includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ or a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title [28 USCS § 1332(c), (d)], nor created under the laws of any third country.

■ A political subdivision of a foreign state includes all governmental units beneath the central government. *Williams v. Shipping Corporation of India*, 489 F.Supp. 526, 531 (E.D.Va.1980) *aff'm* 653 F.2d 875 (4th Cir.1981), *cert. denied* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982). For an entity to be a separate legal person, pursuant to 28 U.S.C. § 1603(b)(1), and as a result to be classified as an "agency or instrumentality of a foreign state", the corporation, association, foundation, or other entity, must be capable of suing or being sued in its own name, of contracting in its own name, or of holding property in its own name under the law of the foreign state where it was created. *Id.;* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.Code & Ad.News 6604, 6614. *See, Yessenin-Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 852 (S.D.N.Y.1978) (The district court listed the factors which establish the existence of a "separate legal person" as including the ability to open bank accounts, to acquire and alienate property, and to conclude contracts in its own name.)

The ANC is a department of the Argentine Navy whose goal is to procure supplies from foreign countries. The ANC maintains an office in the District of Columbia which is staffed exclusively by active duty Argentine Naval officers on two-year assignments from Argentina. These naval officers are treated as diplomatic agents and report directly to the Argentine ambassador. All contracts are negotiated at the express decision and directive of the Argentine Navy itself. ANC's offices are located in a building owned by Argentina which flies the Argentine flag. The agency has no independent existence in Argentina precluding ANC from owning Argentine property in its own name and from suing or being sued in its official capacity in Argentina. ANC can do no act necessary to justify a finding that it is a separate legal person.

■ The ANC is part and parcel of the Argentine Navy thereby qualifying as a foreign state or a political subdivision of the Argentine government. The plaintiff has introduced no basis to differentiate ANC's existence as separate from the Argentine Navy. The ANC has no life other than that derived from Argentina; rather the agency *is* Argentina within the United States, not an entity independent of it. *Cf. Croatan Books, Inc. v. Virginia*, 574 F.Supp. 880, 885 (E.D.Va.1983). One may analogize ANC's position as a department within a larger division, intregal, but retaining minimal independent characteristics. Accordingly, ANC is not an "agency or instrumentality" as defined in § 1603(b).[1]

---

**1.** The plaintiff cites four district court cases supporting the argument that ANC is an "agency or instrumentality" of the Argentine government. No case cited controls this Court's decision and each is clearly distinguishable. In three of the decisions the foreign entity was found to be an agency or instrumentality of a foreign state without discussion by the district court and apparently without dispute among the parties as to the entity's proper status. *Bankers Trust Company v. World Wide Transportation Services*, 537 F.Supp. 1101, 1107 (E.D.Ark.1982); *Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284 (S.D.N.Y.1980) *aff'm* 647 F.2d 320 (2nd Cir.1981) *reversed on other grounds* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *Behring International, Inc. v. Imperial Iranian Air Force*, 475 F.Supp. 383, 389 n. 11 (D.N.J. 1979), *aff'm* 699 F.2d 657 (3d Cir.1983).

In the remaining case cited, the district court for the Southern District of New York distinguished between a foreign state or its political subdivision and an agency or instrumentality thereof. *Yessenin-Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 852 (S.D.N.Y.1978). The

This distinction becomes important because service upon a foreign state substantially varies from service on an agency or instrumentality of a foreign state. Service on the political subdivision of a foreign state is as follows:

§ 1608. *Service; time to answer; default.*

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

These procedures are the *exclusive* means of service and subsections one through four establish a heirarchy requiring a plaintiff first to serve process in accordance with any special arrangement, and if none, then according to any applicable international convention on service of judicial documents, and if none, then as provided in subsections three and four. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.Code & Ad.News 6604, 6623.

The plaintiff made no attempt to serve ANC in compliance with 28 U.S.C. § 1608(a). No special arrangement for service exists between Unidyne and the ANC. Argentina is not a signatory to a protocol relating to any international treaty or convention on the service of judicial papers. Nor has the plaintiff dispatched the summons, complaint, notice of suit and a translation of each to either the clerk of court of the Argentine ministry of foreign affairs or to the Secretary of State in Washington, D.C. for delivery of papers through diplomatic channels.

Rather, the plaintiff relies on service to the Virginia Secretary of the Commonwealth pursuant to the state long-arm statute. While this method of service conceivably is appropriate on a foreign agency or

---

district court easily determined that the Telegraph Agency of the Soviet Union (TASS) met the definition of a foreign state but classified the Novosti Press Agency as an agency or instrumentality of the Soviet government with more difficulty. The defendant press agency attempted to show it was not an organ of the state relying on a statute absolving the Soviet government of any financial responsibility for Novosti,

and the fact that the entity owned fixed assets and leased property. In *Yessenin-Volpin* the issue facing the Court was not whether the entity was a separate legal person from the foreign state, but rather whether the entity, Novosti, was so distinct that it was not an organ of the government at all. As such, the analysis is dissimilar and is not dispositive on the action *sub judice.*

instrumentality pursuant to 28 U.S.C. § 1608(b)(2), such is not the case at hand.[2] Accordingly, the plaintiff has failed to obtain in personam jurisdiction pursuant to 28 U.S.C. § 1330(b) over the defendant, ANC, because proper service was not accomplished in accordance with 28 U.S.C. § 1608(a). Because proper service was not effected, and the defendant ANC is not properly before this Court at this time, we need not determine whether the Court possesses appropriate subject matter jurisdiction.

For the reasons stated above, this Court finds that no in personam jurisdiction was obtained over the defendant, ANC, because service in accordance with 28 U.S.C. § 1608(a) was not obtained. As a result, the defendant's motion to dismiss is GRANTED and the action is ORDERED DISMISSED without prejudice as to the Argentine Naval Commission.

IT IS SO ORDERED.

**2.** Section 1608(b) of Title 28 provides as follows:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state: (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state— (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or (C) as directed by order of the court consistent with the law of the place where service is to be made.