Randall J. MARLOWE, Plaintiff,

v.

ARGENTINE NAVAL
COMMISSION, Defendant.

Civ. A. No. 84–1870.

United States District Court,
District of Columbia.

March 14, 1985.

Robert R. Smiley, III, Smiley, Olson, Gil-
man & Pangia, Washington, D.C., for plain-
tiff.

Bruno A. Ristau, Joel E. Leising, Kaplan, Russin & Vecchi, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

BACKGROUND

Before the Court is defendant's Motion to Dismiss, opposition thereto, and supporting memoranda. For the reasons herein stated, the Court denies the Motion to Dismiss.

The parties agree as to all facts material to the instant Motion. This suit is based on an alleged breach of a contract for the purchase of two aircraft by the Argentine Armada (Navy) from plaintiff's assignee, a Panamanian corporation known as Servistan S.A. The contract was negotiated by plaintiff, acting as the seller's representative, and representatives of the Armada and defendant Argentine Naval Commission ("ANC"). The negotiations took place in Buenos Aires, Argentina, and at the ANC headquarters in Washington, D.C. The contract was signed on behalf of the Armada by the then Acting Chief of the Argentine Naval Commission in Washington, D.C., and it identified the purchaser as "ARMADA ARGENTINA—Argentine Naval Commission having its principal place of business at 630 Indiana Ave., N.W., Washington, D.C. 20004." The contract was signed on behalf of the seller by the plaintiff, Randall J. Marlowe, and the seller was identified as "SERVISTAN S.A. —P.O. Box 4871—Panama 5—Republica de Panama, represented in this stand by R.J. MARLOWE & ASSOCIATES, having its place of business at Av. Rivadavia 5154— Capital Federal—ARGENTINA."

At the time the contract was executed, the seller did not have title to, or possession of, the aircraft. The seller was to obtain the aircraft from an Ecuadorian interest for delivery and sale to the buyer. The contract required that payment of the purchase price, expressed in United States currency, be assured by the buyer by an irrevocable letter of credit. Payment under the letter of credit was to be made in several installments, based upon a contractual schedule. The contract further contained detailed provisions for the inspection and technical approval of the aircraft, taxes, warranties, and conditions for excusable delays. Finally, Article 10 of the contract provided, under the heading "MISCELLANEOUS", as follows:

A. This agreement shall be governed by and construed in accordance with the laws of the District of Columbia, U.S.A.

B. All notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have given or made when deposited in the mail, postage prepaid, or in the case of telegraphic notice when delivered to the telegraph company or when actually sent by Telex, addressed to Seller, or Buyer, as the case may be, at their respective addresses set forth below:

In the case of the Buyer:
ARMADA ARGENTINA
ARGENTINA (sic) NAVAL COMMISSION
630 INDIANA AVE.—N.W.
WASHINGTON, D.C.—20004
TEL.: 202–626–2100
In the case of the Seller:
SERVISTAN S.A.
P.O. BOX 4871
PANAMA 5—PANAMA
TELEX: 2769 (DIMAR PG).

Plaintiff filed the complaint in this case on June 19, 1984, alleging breach of contract and fraud. Service of the summons and complaint was made on ANC in Washington, D.C. Service was addressed to:
CHIEF, ARGENTINE NAVAL COMMISSION
630 INDIANA AVE., N.W.
WASHINGTON, D.C. 20001

Although defendant received the service, it did not promptly respond to the complaint, and on September 28, 1984, the Court granted plaintiff's motion for default judgment. After plaintiff attached some of defendant's local assets, ANC, on December 3, 1984, moved for relief from the default judgment. By Order of January 30, 1985, the Court, noting the "liberal spir-

it" of Rule 60(b) as applied to cases involving default judgments, *Spann v. Commissioners of the District of Columbia,* 443 F.2d 715, 716 n. 1 (D.C.Cir.1970), vacated the default judgment against ANC. ANC has now filed the instant Motion to Dismiss. In this Motion, ANC raises three grounds for dismissal: (1) that ANC lacks the capacity to be sued; (2) that service of process was insufficient under the Foreign Sovereign Immunities Act; and (3) that this Court lacks jurisdiction under that Act.[1] As demonstrated below, all of these arguments fail.

## DEFENDANT IS A FOREIGN STATE UNDER FEDERAL LAW, AND THUS IS CAPABLE OF BEING SUED

### 1. Federal Law Determines the Juridicial Status of ANC.

ANC asserts that to determine whether an entity has the capacity to sue or be sued, reference must be made to that body of law under which the entity exists. In this case, the entity, ANC, was created under Argentine law. Under Argentine law, ANC continues, it is a mere subordinate command of the Argentine Armada, and one of its missions is the procurement of materials, spare parts, and supplies from foreign countries for use by the Armada. ANC has submitted a legal opinion from the legal adviser of the Argentine Embassy, Cesar F. Matas, who concludes, based on the creation and role of the ANC, that under Argentine law ANC lacks the capaci-

ty to sue or be sued.[2] The only proper defendant, according to ANC, would be the Republic of Argentina.

█ This argument rests upon a faulty premise. The juridical capacity of ANC must be determined not by Argentine law, but by "principles ... common to both international law and federal common law." *First National City Bank v. Banco para el Comercio Exterior de Cuba,* 462 U.S. 611, 623, 103 S.Ct. 2591, 2598, 77 L.Ed.2d 46 (1983).[3] In *First National City Bank,* the Supreme Court considered the juridical status of a state-owned Cuban bank. The respondent there offered an argument similar to that presented by ANC here—that the law of the chartering state determined the bank's juridical status. Rejecting that argument, the Supreme Court stated:

> To give conclusive effect to the law of the chartering state in determining whether the separate juridicial status of its instrumentality should be respected would permit the state to violate with impunity the rights of third parties under international law while effectively insulating itself from liability in foreign courts. We decline to permit such a result.

103 S.Ct. at 2597 (footnotes omitted). Instead, the Court held that "the principles governing this case are common to both international law and federal common law, which in these circumstances is necessarily informed both by international law princi-

---

1. At a status conference held on January 29, 1985, wherein the Court articulated its reasons for vacating the default judgment against ANC, the Court noted that these arguments presented colorable jurisdictional questions. The Court, of course, did not at that time rule on those questions.

2. In addition to the legal opinion and an affidavit, ANC submits a response by the Argentine Embassy to a State Department inquiry as to the legal status of ANC. The December 4, 1984, response by the Embassy asserts that the role of ANC is that of a "subordinate command of the Argentine Navy", the function of which "consists mainly in arranging training courses and procuring materiel for the Argentine Navy as well as overseeing its repair." The Court does

not necessarily doubt the veracity of these assertions, *cf. United States v. City of Glen Cove,* 322 F.Supp. 149, 154 (E.D.N.Y.), *aff'd mem.,* 450 F.2d 844 (2d Cir.1971), but the legal significance of these facts must be determined in accordance with federal law. *See First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba,* 103 S.Ct. 2591, 2597–98 (1983), and the discussion which follows, *infra* pp. 705–706.

3. Plaintiff's argument that District of Columbia law governs the juridical capacity of ANC also misses the mark. In *First Nat'l Bank,* 103 S.Ct. at 2597–98 n. 11, the Supreme Court held that state law does not determine the "amenability of a foreign sovereign to suit in United States courts."

ples and by articulated congressional policies." *Id.* at 2598.[4]

Acceptance of ANC's argument in the present case might render a result which the Supreme Court has "decline[d] to permit"—that ANC could "violate with impunity the rights of third parties ... while effectively insulating itself from liability in foreign courts."[5] *Id.* at 2597. Therefore, Argentine law does not control this question, and the Court looks to federal law to determine whether ANC may be sued.

### 2. Under Federal Law, ANC is a Foreign State.

■ The Federal Sovereign Immunities Act ("FSIA") is a comprehensive congressional scheme which regulates the amenability of foreign nations to suit in the United States. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). This federal law defines some entities as "foreign states", and others as "agencies or instrumentalities of foreign states". 28 U.S.C. 1603. Assuming proper service, unless a "foreign state", or an "agency or instrumentality" thereof, is immune under the Act, this Court has jurisdiction over it in a civil action such as this one. 28 U.S.C. § 1330(a). Therefore, this "articulated congressional polic[y]" determines the juridical status of certain branches of foreign governments. *See First National City Bank*, 103 S.Ct. at 2598. Accordingly, the Court must determine whether ANC is a "foreign state" or an "agency or instrumentality of a foreign state" under the Act.

The FSIA defines a "foreign state" and an "agency or instrumentality" thereof in 28 U.S.C. § 1603:

For the purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ or a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

It is apparent from the statutory language that the FSIA substantially equates a "foreign state" with an "agent or instrumentality of a foreign state". There are significant differences, however, concerning the service of process upon the two under the FSIA. See 28 U.S.C. § 1608. Proper service upon a foreign state, detailed in § 1608(a), is somewhat different from proper service upon an agency or instrumentality of a foreign state, described in § 1608(b). This difference was the issue which recently faced one federal court in a case involving ANC. *Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 398 (E.D.Va.1984). In *Unidyne*, the court dismissed the suit against ANC, a co-defendant, for lack of proper service. In so doing, the court relied on many of the same factual assertions presented by ANC in the present case:

The ANC is a department of the Argentine Navy whose goal is to procure supplies from foreign countries. The ANC maintains an office in the District of Columbia which is staffed exclusively by active duty Argentine Naval officers on two-year assignments from Argentina. These naval officers are treated as diplomatic agents and report directly to the Argentine ambassador. All contracts are negotiated at the express deci-

---

4. Indeed, the Court noted, 103 S.Ct. at 2598, that international law "'is part of our law ...'", quoting *The Paquete Habana*, 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed. 320 (1900).

5. Of course the Court does not today pass on the merits of this case.

sion and directive of the Argentine Navy itself. ANC's offices are located in a building owned by Argentina which flies the Argentine flag. The agency has no independent existence in Argentina precluding ANC from owning Argentine property in its own name and from suing or being sued in its official capacity in Argentina. ANC can do no act necessary to justify a finding that it is a separate legal person.

The ANC is part and parcel of the Argentine Navy thereby qualifying as a foreign state or a political subdivision of the Argentine government. The plaintiff has introduced no basis to differentiate ANC's existence as separate from the Argentine Navy. The ANC has no life other than that derived from Argentina; rather the agency *is* Argentina within the United States, not an entity independent of it. *Cf. Croatan Books, Inc., v. Virginia,* 574 F.Supp. 880, 885 (E.D.Va. 1983). One may analogize ANC's position as a department within a larger division, integral, but retaining minimal independent characteristics. Accordingly, ANC is not an "agency or instrumentality" as defined in § 1603(b).

590 F.Supp. at 400.

The Court in *Unidyne* relied on ANC's role in its government to conclude that it was a "foreign state" under the FSIA, 28 U.S.C. § 1603(a). 590 F.Supp. at 400–01. It dismissed the case only because the plaintiff therein failed to comply with 28 U.S.C. § 1608(a), the exclusive means of service upon "foreign states". 590 F.Supp. at 401.

ANC argues that the above-quoted language supports its position that ANC is not a suable entity. In addition to this quotation from *Unidyne*, ANC cites similar language in the Declaration of Cesar F. Matas to the effect that "the A.N.C. is an integral part, and a subordinate command, of the Argentine *Armada* (Navy)." Mates Dec. ¶ 11; *see also* Kelly Aff. ¶ 2. *Unidyne* makes it clear, however, that ANC's role in the structure of the Argentine government does not demonstrate a lack of juridicial

capacity, as ANC suggests. Instead, these facts demonstrate that ANC is a "foreign state" under federal law. *See* 590 F.Supp. at 400–01. Thus, *Unidyne*, which was decided after *First National City Bank*, indicates that ANC, a "foreign state", is a juridicial entity under federal law. Under the FSIA, it is a proper defendant if it is not immune from suit and if service upon it was proper. *See* 28 U.S.C. §§ 1608, 1330.

**PLAINTIFF PROPERLY SERVED ANC UNDER THE FSIA, 28 U.S.C. § 1608(a)**

■ Because ANC is a "foreign state", section 1608(a) of the FSIA provides that exclusive means of service. *E.g. Unidyne,* 590 F.Supp. at 401; H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 24, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6623 (hereafter "House Report"). That section of the FSIA provides, in relevant part:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; . . . .

28 U.S.C. § 1608(a).

As previously noted, Article 10 of the contract at issue contained a "special arrangement" providing that "[a]ll notices, requests, demands or other communications to or upon the respective parties" shall be made by mail or telex. The contract provides that such a demand or other communication could be made upon the buyer by mailing it to the following address:

ARMADA ARGENTINA
ARGENTINA (sic) NAVAL COMMISSION
630 INDIANA AVE.,—N.W.
WASHINGTON, D.C.—20004.

Plaintiff in the present case served the summons and complaint by mailing them to the following addressee:

CHIEF, ARGENTINE NAVAL COMMISSION
630 INDIANA AVE., N.W.
WASHINGTON, D.C. 20001

This certainly constitutes substantial compliance with the contractual provision found in Article 10–B. The defendant does not dispute that it received notice of the suit, and, under the circumstances of this case, such notice is sufficient. *See Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352 (11th Cir. 1982) (finding service sufficient even though there was no literal compliance with the provisions of 28 U.S.C. § 1608). Therefore, unlike the plaintiff in *Unidyne*, Marlowe properly served ANC.

ANC contends that Article 10–B did not constitute a "special arrangement *for service*" between the two parties within the meaning of section 1608. Because the contract did not specifically provide for service of legal process, defendant argues, this Article did not define an acceptable means of service under the FSIA.[6] The Court finds ANC's argument to be overly technical. Service of process certainly falls under the contractual language of "notices, requests, demands or other communications to or upon the respective parties." Because plaintiff substantially complied with this arrangement for service, such service was proper upon ANC, a "foreign state", under the FSIA, 28 U.S.C. § 1608(a)(1).

## BECAUSE ANC WAIVED ITS IMMUNITY FROM SUIT, THIS COURT HAS JURISDICTION

■ The FSIA grants jurisdiction to district courts over cases against a foreign state with respect to which the foreign state is not entitled to foreign sovereign immunity. 28 U.S.C. § 1330(a). *See also Verlinden*, 461 U.S. at 489, 103 S.Ct. at 1969. The Act contains several exceptions

to immunity for foreign states. 28 U.S.C. § 1604–1607. In the present case, the "waiver" exception of 28 U.S.C. § 1605(a)(1) applies.

In relevant part, 28 U.S.C. § 1605 provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication ...

28 U.S.C. 1605(a)(1). In the present case, ANC waived its immunity by stipulating that its contract with plaintiff's assignor "shall be governed by and construed in accordance with the laws of the District of Columbia."

This choice of law clause is sufficient to constitute an implied waiver under the Act. In explaining this section of the FSIA, § 1605(a)(1), the House Report states that "[w]ith respect to implicit waivers, the courts have found such waivers in cases where a foreign state ... has agreed that the law of a particular country should govern a contract." House Report at 18, 1976 U.S.Code Cong. & Ad.News at 6617. This House Report has been generally noted as authoritative legislative history. *E.g. Verlinden*, 461 U.S. at 488, 103 S.Ct. at 1968; *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1027–28 (D.C.Cir.1982).

Federal courts have often cited this very section of the House Report. In one such case, *Ohntrup v. Firearms Center, Inc.*, 516 F.Supp. 1281, 1284–85 (E.D.Pa.1981), the court concluded, albeit in dicta, that:

A waiver of sovereign immunity may be inferred from an agreement to arbitrate a dispute in another country or to refer disputes to the laws of another country.... [I]t is reasonable to conclude that an agreement by a foreign country

---

**6.** In opposing defendant's earlier motion for relief from the default judgment, plaintiff had stated that "[n]o special arrangements for process and service of process on the ANC exists between plaintiff and defendant; for that reason paragraph 1608(b)(1) [which is substantially

similar to § 1608(a)(1) ] is inapplicable." Plaintiff now admits, however, that at that time he had overlooked that clause in the contract. Because plaintiff did, in fact, comply with that provision, the Court holds that service was proper.

to either arbitrate disputes in or be governed by the laws of the United States constitutes an implicit waiver by that state of the defense of sovereign immunity in the courts of the United States.

Similarly, in *Resource Dynamics International v. General People's Committee,* 593 F.Supp. 572 (N.D.Ga.1984), the plaintiff entered into a contract with a foreign defendant. The contract provided that "[t]his Agreement and the performance or breach hereof shall be governed by the procedural and substantive laws in effect in the State of Virginia." Citing the passage from the House Report, the court held that this provision constituted an implicit waiver of defendant's sovereign immunity under 28 U.S.C. § 1605(a)(1). 593 F.Supp. at 575.

In *Ipitrade International v. Federal Republic of Nigeria,* 465 F.Supp. 824 (D.D.C. 1978), the parties to a contract agreed that the construction, validity, and performance of the contract would be governed by the laws of Switzerland and that any disputes arising under the contract would be submitted to arbitration by the International Chamber of Commerce in Paris. After a dispute arose, the Swiss arbitrator granted an award to the petitioner in a proceeding which Nigeria refused to attend, relying on the defense of sovereign immunity. In another proceeding in which Nigeria refused to attend, Judge Gasch of this Court, citing the House Report, confirmed the award because the agreement to adjudicate all contractual disputes in accordance with Swiss law constituted a waiver of sovereign immunity under the FSIA. 465 F.Supp. at 826.

Although the contractual language in each of these cases differs somewhat from that in the present case, these cases hold a clear message for this one: if the parties to a contract agree that the laws of one country will govern contractual interpretations, they have implicitly waived the defense of sovereign immunity. In this case, because ANC agreed that the contract would be governed by District of Columbia law, it has implicitly waived its sovereign immunity within the meaning of 28 U.S.C. § 1605(a)(1).

ANC attempts to dismiss the relevant portion of the House Report as "singularly devoid of any authoritative support." Def. Memorandum at 14. The above-cited cases demonstrate that, at least by this point in time, there is more than adequate authority for the proposition noted in the House Report. Indeed, it is defendant's position which now seems to lack support.

ANC points to the laws of several nations, as well as the proposals of certain international organizations, to argue that the view that an agreement on the proper law of a contract constitutes an implied consent to the jurisdiction of the state whose law has been chosen does not comport with international law. ANC contends that the established international practice requires express and unambiguous consent to such jurisdiction. This discussion, while somewhat instructive, simply does not represent the current state of the FSIA, which expressly provides for waiver by implication. 28 U.S.C. § 1605(a)(1).[7]

■ Defendant also suggests that, even assuming ANC waived its defense of sovereign immunity, it still has insufficient contacts with the United States for this Court to obtain personal jurisdiction over it. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Gilson,* 682 F.2d at 1028. The defense of lack of personal jurisdiction, though, may be waived by a party. *Petrowski v. Hawkeye-Security Insurance Co.,* 350 U.S. 495, 496, 76 S.Ct. 490, 490,

---

**7.** The plaintiff also asserts that the "commercial activities" exception to immunity applies in this case. 28 U.S.C. § 1605(a)(2). While defendant admits that during negotiations there were some contacts between ANC in Washington and Servistan S.A.'s representative in Panama and Ecuador, the record is not clear as to the extent of these contacts as they have bearing on § 1605(a)(2). The Court does hold, *infra* pp. 709–710, that there are sufficient minimum contacts to satisfy due process. Although the record is insufficient to permit a ruling on the § 1605(a)(2) issue, the Court's holding that ANC waived both its immunity and its defense of lack of personal jurisdiction renders such a ruling unnecessary.

100 L.Ed. 639 (1956). Because the FSIA governs both personal and subject matter jurisdiction, *Verlinden,* 461 U.S. at 485 n. 5, 103 S.Ct. at 1967 n. 5, ANC's implicit waiver of immunity under § 1605(a)(1) constituted a waiver of the defense of lack of personal jurisdiction. *Petrowski, supra.* This result obtains in the absence of the normally required minimum contacts. *Gilson, supra.* As the House Report states, after noting the concerns raised by *International Shoe,* "each of the immunity provisions in the bill, sections 1605–1607, requires some connection between the lawsuit and the United States, *or* an express or implied waiver by the foreign state of its immunity from jurisdiction." House Report at 13, 1976 U.S. Code Cong. & Ad. News at 6612 (emphasis supplied).

Moreover, the contract in this case clearly demonstrates that ANC has sufficient "minimum contacts" in the United States. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. ANC maintains its headquarters, i.e., its "principal place of business", in Washington, D.C. The contract was negotiated, at least in part, in Washington. Any demands or notices were to be sent to ANC's Washington address. Defendant has availed itself of the benefits and privileges of District of Columbia law. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); *Gilson,* 682 F.2d at 1028–29. In short, nothing about this Court's assertion of jurisdiction over ANC "offend[s] 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Accordingly, the Court has personal jurisdiction over defendant.

## CONCLUSION

The Court today holds that the defendant herein, the Argentine Naval Commission, is a "foreign state", and thus a juridicial entity under the Foreign Sovereign Immunities Act. Because defendant was properly served, and waived its sovereign immunity,

this Court has both subject matter and personal jurisdiction in this case. *See Verlinden,* 461 U.S. at 485 n. 5, 103 S.Ct. at 1967 n. 5. Accordingly, the Court has today issued an Order denying defendant's Motion to Dismiss.