PHOENIX CONSULTING,
INC., Plaintiff,

v.

The REPUBLIC OF ANGOLA,
Defendant.

No. Civ.A. 97–1824(HHK).

United States District Court,
District of Columbia.

Feb. 5, 1999.

Richard S. Sternberg, Washington, DC, for plaintiff.

Steve Hammond, Daniel Wolf, M. Kathleen O'Connor, Hughes Hubbard & Reed LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Phoenix Consulting, Inc., a Washington, D.C. corporation, has brought this action for breach of contract against the Republic of Angola. Before this court is Angola's renewed motion to dismiss. Angola contends that it has not been served and, consequently, this court lacks personal jurisdiction. Angola also asserts that because the only exceptions arguably pertinent to the immunity it enjoys as a foreign sovereign are inapplicable, this court is without subject matter jurisdiction as well. Upon consideration of the motion, the responses thereto, and the entire record of this case, the court concludes that Angola's motion to dismiss must be denied.

### I. FACTUAL BACKGROUND

Even the most fundamental facts in this case are in dispute. According to Phoenix Consulting ("Phoenix"), Phoenix, acting as an affiliate of Phoenix Holdings, Ltd., retained an agent, Eduardo Neto Sangueve, to travel to Luanda to offer a prefabricated office building to the Republic of Angola. Unbeknownst to Phoenix, Sangueve was actually an agent of the Angolan government at the time. While in Luanda, Sangueve reported to Phoenix's headquarters in Washington, D.C. Angola's Minister of Territorial Administration, Anibal Rocha, ultimately signed a contract with Sangueve agreeing to purchase the building for $325,000. The contract specifically provided that "Phoenix and [the Government of Angola] hereby expressly agree that this Agreement shall be subject to American Law and the Jurisdiction of the American Courts." Thereafter, the eleven building containers were carried off in government-owned trucks under the supervision of an Angolan military officer, and Phoenix never received payment.

Angola denies most of the foregoing facts. Angola contends that the contract is a forgery and denies that Rocha ever agreed to accept Phoenix's offer. Angola also denies that Sangueve worked for the Angolan government at the time of his agency with Phoenix.

Phoenix filed its first amended complaint in the District of Columbia Superior Court on January 4, 1996 against Angola for breach of contract. Apparently upon instructions of the Clerk of the Superior Court, Phoenix attempted to effect service on Angola by having its counsel, Richard S. Sternberg, send a copy of the summons and complaint to Venancio de Silva Moura, Angola's Foreign Secretary, by registered mail, return receipt requested. The return receipt bore the stamp of Angola's Ministry of Foreign Affairs, and the signature of someone named "Teresa" in the box designated for the "Office of Destination Employee Signature." Angola did not respond, and the Superior Court entered an order of default on July 14, 1997 and a judgment of default judgment on July 24, 1997.

On August 13, 1997, Angola removed the action to this court pursuant to 28 U.S.C. § 1441(d). Angola filed a motion to vacate the Superior Court's order of default and judgment of default and to dismiss for lack of personal and subject matter jurisdiction. By memorandum and order of February 6, 1998, this court granted Angola's motion to vacate the default judgment, based on its finding that Phoenix had failed to comply with the service requirements of the Foreign Sovereign Immunities Act ("FSIA"). The court did not decide Angola's motion to dismiss for lack of personal and subject matter jurisdiction, thereby giving Phoenix a further opportunity to serve process on Angola.

Phoenix thereupon made its second attempt. This time, the clerk of this court performed the mailings and obtained a return receipt. This second receipt bears the stamp of Angola's Ministry of Foreign Affairs and unidentified initials in the box designated for the "Office of Destination Employee Signature."

### II. STANDARD OF REVIEW

■ Prior to an evidentiary hearing or discovery, a plaintiff may defeat a motion to

dismiss for lack of personal jurisdiction "by making mere factual allegations to establish a prima facie showing of jurisdiction." *GTE New Media Services Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C.1998). Such allegations may not be bare conclusory statements, but must connect the defendant with the forum. *Id.*

■ In the FSIA context, factual allegations sufficient to defeat a motion to dismiss for lack of personal jurisdiction are also sufficient to defeat a motion to dismiss for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1330(b); *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C.Cir.1990) (personal jurisdiction under the FSIA exists so long as subject matter jurisdiction exists and service has been properly made pursuant to 28 U.S.C. § 1608).

### III. ANALYSIS

#### A. Service of Process

■ Service of process against a foreign state is governed by 28 U.S.C. § 1608(a), which sets forth the "exclusive procedures" for effecting such service. *Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 253 (7th Cir.1983); *see also Marlowe v. Argentine Naval Commission*, 604 F.Supp. 703, 707 (D.D.C.1985). In relevant part, that section provides:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state: ...

(3) ... by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned ...

28 U.S.C. § 1608.

■ In this circuit, "strict adherence to the terms of 1608(a) is required." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.Cir.1994). In *Transaero*, the clerk of the U.S. District Court for the Eastern District of New York sent transla-

tions of the summons and complaint to the defendant Bolivian Air Force, but not to the Bolivian Ministry of Foreign Affairs. *See id.* at 150. When the defendant failed to appear, the New York court granted plaintiff's motion for default judgment. *See id.* On the defendant's motion to quash the New York proceedings, the District Court upheld the default judgment, finding that the plaintiff had satisfied the procedures for service upon "an agency or instrumentality of a foreign state" under 28 U.S.C. § 1608(b), and had therefore properly effected service of process. *See id.* In reversing and remanding with directions to dismiss, the D.C. Circuit held that "armed forces are so closely bound up with the structure of the state" that the provisions of § 1608(a) for service upon "a foreign state" were applicable. *Id.* at 153. The mailings to the Bolivian Air Force "would disorder the statutory scheme" and, therefore, were legally insufficient to effect service of process:

The distinction [between § 1608(a) and § 1608(b) ] is neatly tailored to the differences between "foreign states" and "agencies or instrumentalities." The latter, typically international commercial enterprises, often possess a sophisticated knowledge of the United States legal system that other organs of foreign governments may lack. Thus section 1608(a) mandates service of the Ministry of Foreign Affairs, the department most likely to understand American procedure.

*Id.* at 154.

■ In the instant case, the second mailing strictly adhered to the terms of § 1608(a). The clerk of this court has attested to mailing a "copy of the summons and complaint and a notice of suit together with a translation of each into the official language of the foreign state, by by [sic] registered mail, return receipt requested to the head of the ministry of foreign affairs pursuant to the provisions of 28 U.S.C. § 1608(a)(3)." Certificate of Mailing, April 21, 1998. Neither party has contested the truth of the clerk's statement in any respect.

■ Moreover, the return receipt obtained by the clerk of this court serves as evidence

**18**

that the second mailing was properly addressed insofar as it adhered to the procedures of the Ministry of Foreign Affairs for "the receipt, registry, sortment and distribution of all correspondence and documentation sent to the Ministry," as set forth in Articles 7 and 11 of the ordinance governing the Angolan Ministry of Foreign Relations. See Pl.'s Exh. 22. Angola's contention that there was no one named Teresa employed in the receiving office at the Ministry of Foreign Affairs in March 1996, Decl. of Matias Bertino Matondo at ¶ 4, does not disturb this conclusion. On motion to dismiss, the nonmovant is entitled to have the court consider all allegations of jurisdictional facts in its favor. See *Richard v. Bell Atlantic Corp.,* 946 F.Supp. 54, 67 (D.D.C.1996).

■ The requirement that notice be "addressed and dispatched" to the head of the ministry of foreign affairs is to be satisfied at the time of mailing. See, e.g., *Webster's Ninth New Collegiate Dictionary* 364 (1985) (defining verb "dispatch" as "to send off or away with promptness or speed esp. on official business"). Angola, however, contends that the responsibility of the clerk of this court to "dispatch" notice of a suit pursuant to § 1608(a) does not end when the notice is sent by registered mail, return receipt requested, to the head of the ministry of foreign affairs, but extends to the time and place of delivery.

Angola's expansive reading of the "dispatch" requirement is based on the principle that "a person who is authorized to sign for and receive incoming mail does not have the additional authority to accept service of process unless that person has been specifically conferred with such additional authority." Def.'s Mot. Dismiss at 11. This proposition, based on case law construing Fed.R.Civ.P. 4, is inapplicable here. While Rule 4 contains similar language to that of § 1608, none of the cases cited by Angola construes terms appearing in § 1608(a)(3) or involves an agent who had actual legal authority to re-

ceive "all correspondence ... sent to the [defendant]." [1]

For example, in *Way v. Mueller Brass Co.,* 840 F.2d 303 (5th Cir.1988), the summons and complaint against a state agency was mailed to the manager of a local office of the agency. The Fifth Circuit construed Rule 4(d)(6), which provides that service on a state agency shall be made "by *delivering* a copy of the summons and of the complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process." *Id.* at 305 (emphasis added). The relevant Mississippi statute prescribed that summons in a suit against a stage agency be served upon the attorney general. *Id.* The court found that neither Rule 4 nor the Mississippi statute had been satisfied. *Id.* at 305–06. Thus *Way* presented a violation of an explicit requirement of delivery to the chief executive officer or attorney general. No such explicit requirement is present here.

Angola's other authorities are likewise inapplicable to this case. See *Piascik v. Trader Navigation Co.,* 7 F.R.D. 118, 119 (S.D.N.Y. 1946) (construing Rule 4 where "there is nothing in plaintiff's affidavit" to suggest that the agent was authorized to receive service); *Hardy v. O'Daniel,* 16 F.R.D. 355, 356 (D.D.C.1954) (construing Rule 4(d) "in this instance" where process was served upon an agent who served chiefly to collect payments for the defendant), and *Robinson v. Turner,* 886 F.Supp. 1460, 1464 (S.D.Ind.1995) (construing Indiana Trial Rule 4.16(B) where process was served on an agent who was authorized only to receive official mail).

■ "[S]trict adherence to the terms of 1608(a)" does not also require adherence to all terms of Rule 4. By its own terms, Rule 4 does not govern "[s]ervice upon a foreign state or a political subdivision, agency, or instrumentality thereof"; instead, it expressly states that such service shall be effected pursuant to 28 U.S.C. § 1608. *See* Fed. R.Civ.P. 4(j).

---

1. Angola's reliance on case law construing other service of process provisions is especially remarkable, given that it has emphasized that § 1608(a) "delineates the 'exclusive procedures'

for effecting service of process upon a foreign state." Def.'s Renewed Mot. to Dismiss at 9 (quoting *Alberti,* 705 F.2d at 253).

The core function of service of process is "to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States,* 517 U.S. 654, 671, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). At a minimum, effective communication of any notice requires the active participation of both the dispatcher and the recipient. Section 1608(a)(3) prescribes certain mailing procedures designed to afford the defendant a fair opportunity to respond, but even "strict adherence" to its terms cannot guarantee with certainty that the head of the foreign ministry will actually receive and understand the notice that has been supplied. *See Transaero,* 30 F.3d at 154 (finding that § 1608(a) requires "service of the Ministry of Foreign Affairs, the department *most likely* to understand American procedure") (emphasis added).

Requiring the plaintiff to guarantee what she cannot control would "disorder the statutory scheme." Given the necessary imperfections in this channel of communication, the court declines to discover duties in § 1608(a)(3) that are neither expressly required nor within the plaintiff's competence. In this case, where the process documents have been dispatched in compliance with the express terms of § 1608(a)(3) and delivered in conformity with the foreign ministry's internal mail handling procedures, the court finds that Phoenix has supplied Angola with notice sufficient to afford Angola a fair opportunity to answer the complaint and present objections.

## B. Sovereign Immunity

A foreign state may waive sovereign immunity by express provision in a contract. The FSIA states in relevant part:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . .

28 U.S.C. § 1605.

Phoenix alleges that Angola executed and breached a sales contract that contained the following language: "Phoenix and [Angola] hereby expressly agree that this Agreement shall be subject to American Law and the Jurisdiction of the American Courts." Such a provision is sufficient to constitute an implied waiver of sovereign immunity under the FSIA. *See, e.g., Eckert Intern., Inc. v. Government of Fiji,* 32 F.3d 77, 80 (4th Cir.1994) (holding that choice of law provision constitutes implied waiver); *Marlowe v. Argentine Naval Comm'n,* 604 F.Supp. 703, 708 (D.D.C.1985) (finding implied waiver in stipulation that contract "shall be governed by and construed with the laws of the District of Columbia"). Phoenix has therefore stated factual allegations sufficient to defeat a motion for dismissal for lack of subject matter jurisdiction. *See GTE New Media Services Inc.,* 21 F.Supp.2d at 36. Angola's contention that the contract is a forgery, Decl. of Jose Anibal Rocha at ¶ 4, is unavailing. On motion to dismiss, the court is to consider all allegations of jurisdictional facts in Phoenix's favor. *See Richard,* 946 F.Supp. at 67.

Angola's argument against the existence of subject matter jurisdiction focuses on the commercial activity exception to the FSIA:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . .

28 U.S.C. § 1605(a)(2). Essentially, Angola contends that the acts it allegedly performed "in the United States" or having a "direct effect in the United States" were legally insufficient to establish subject matter jurisdiction.

Phoenix, however, is not required to make such a showing. An implicit waiver of immunity under § 1605(a) will defeat a defense of lack of personal jurisdiction (and, *a fortiori*, subject matter jurisdiction) even absent a showing of contacts with the United States sufficient to trigger the § 1605(a)(2) exception. *See Marlowe*, 604 F.Supp. at 709 n. 7 (waiver of immunity and of defense of lack of personal jurisdiction by implication renders a ruling on § 1605(a)(2) unnecessary).

## IV. CONCLUSION

For the foregoing reasons, it is this 5th day of February, 1999, hereby **ORDERED** that defendant's motion to dismiss for lack of personal and subject matter jurisdiction is **DENIED.**