**FLY BRAZIL GROUP, INC., a Florida corporation, Plaintiff,**

v.

**THE GOVERNMENT OF GABON, AFRICA, and Afrijet Business Services, Defendants.**

No. 09–60239–CV– ZLOCH/ROSENBAUM.

United States District Court, S.D. Florida.

Jan. 29, 2010.

---

Stuart Arthur Goldstein, Miami, FL, for Plaintiff.

Joseph A. DeMaria, Maria N. Vernace, Tew Cardenas LLP, Miami, FL, for Defendants.

## ORDER

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon the Report And Recommendation (DE 49) filed herein by United States Magistrate Judge Robin S. Rosenbaum and upon Plaintiff Fly Brazil Group, Inc.'s Agreed Motion Approving The January 22, 2010 Report And Recommendation And Granting Plaintiff Sixty (60) Days To Effect Service Of Process On The Government Of Gabon, Africa (DE 51). The Court has conducted a de novo review of the entire record herein and is otherwise fully advised in the premises.

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED as follows:

1. The Report And Recommendation (DE 49) filed herein by United States Magistrate Judge Robin S. Rosenbaum be and the same is hereby approved, adopted and ratified;

2. Defendant the Government of Gabon, Africa's Motion To Quash Plaintiff Fly Brazil Group, Inc.'s Third Service Attempt Of The Verified Amended Complaint For Insufficient Service Of Process (DE 28) be and the same is hereby **GRANTED**;

3. Plaintiff Fly Brazil Group, Inc.'s Agreed Motion Approving The January 22, 2010 Report And Recommendation And Granting Plaintiff Sixty (60) Days To Effect Service Of Process On The Government Of Gabon, Africa (DE 51) be and the same is hereby **GRANTED;**

4. Plaintiff Fly Brazil Group, Inc. shall have until Wednesday, March 31, 2010, to effect proper service on the Government of Gabon, Africa; and

5. Plaintiff Fly Brazil Group, Inc. shall provide a copy of the service papers to counsel for the Government of Gabon immediately upon dispatch of those papers.

### REPORT AND RECOMMENDATION

ROBIN S. ROSENBAUM, United States Magistrate Judge.

This matter comes before the Court upon Defendant the Government of Gabon, Africa's Motion to Quash Plaintiff Fly Brazil Group, Inc.'s Third Service Attempt of the Verified Amended Complaint for Insufficient Process and Insufficient Service of Process [D.E. 28], referred to me for report and recommendation by the Honorable William. J. Zloch [D.E. 46]. The Court has carefully reviewed Gabon's Motion, all filings in support thereof and in opposition thereto, and the record in this matter. After thorough consideration, I respectfully recommend that the Court grant Defendant Gabon's Motion.

### *Background*

### *1. The Underlying Facts*

This matter arises out of a December 6, 2006, document entitled, "Exclusive Mandate," directed to Dilson Prado Da Fonseca of Plaintiff Fly Brazil Group, Inc. ("Fly Brazil" or "Plaintiff"), in Fort Lauderdale, Florida, and signed in Memphis, Tennessee, by Jean Baptist Tomi as "CEO; Gov-

ernment of Gabon Afrijet." *See* D.E. 2–1 at 5, 7;[1] *see also* D.E. 1 at 17. This document states, in relevant part,

> I am pleased to announce our company has agreed to appoint FLY BRAZIL GROUP INC., Mr. DILSON PRADO, this exclusive mandate in reference to find and present to us 01 Boeing 777 aircraft for acquisition—BOEING 777–236 N Y02BA SERIAL NUMBER 27108 (EX VARIG)
>
> We here mandate Mr. DILSON PRADO DA FONSECA of FLY BRAZIL GROUP INC. exclusively to source the mentioned aircraft on an acquisition, your job and consulting service the total VALUE of U.S. $6,000,000.00, basis under the following conditions:
>
> We therefore ask you to provide us with proposals and with the technical specifications for the relevant aircraft, and to support us in evaluating the offers and in managing the whole procurement process.
>
> This exclusive mandate is valid for one year, Starting from the day and date this letter is signed....

D.E. 1 at 17.

According to Plaintiff Fly Brazil, this document represents an agreement whereby Fly Brazil was commissioned to perform interior and exterior consulting design, engineering, and modification services for a Boeing 777 aircraft to be acquired for Gabon. D.E. 2–1 at 5, 7. Fly Brazil asserts that in accordance with the December 6, 2006, document, Fly Brazil, in fact, performed "interior and exterior consulting, design, engineering, and modification services" on a particular aircraft (the "Aircraft") in Broward County. *Id.* at 5, 8. Thereafter, Fly Brazil avers, it billed the Government of Gabon by invoice

---

1. The page numbers that the Court uses in this Report and Recommendation are those imprinted on the tops of the documents by the Court's CM/ECF system.

for $5,994,888.00 for the work that Fly Brazil performed. *Id.; see also* D.E. 1 at 18. Although, according to Fly Brazil, Gabon has never objected to the invoice, Fly Brazil complains that Gabon has not paid the invoice. D.E. 2–1 at 5, 8, 9.

## 2. *The Procedural History*

Fly Brazil filed the original version of this lawsuit on June 11, 2008, in the Circuit Court for the 17th Judicial Circuit in and for Broward County, Florida. D.E. 1 at 1, 1. In the original Verified Complaint, Fly Brazil sued Gabon and Wells Fargo Bank Northwest ("Wells Fargo"). *See* D.E. 1 at 11. More specifically, Fly Brazil filed a breach-of-contract claim against Gabon and a lien foreclosure claim against Wells Fargo, asserting that Wells Fargo was the record owner of the Aircraft. *Id.* at 11–15. In a third count against both Gabon and Wells Fargo, Fly Brazil sought a writ of attachment for the Aircraft, which Fly Brazil averred was located at that time in the Commonwealth of Virginia. *Id.* at 15.

On June 18, 2008, Fly Brazil unsuccessfully attempted to make service of the original Verified Complaint upon Defendant Gabon. *Id.* at 1. In response to that service attempt, counsel for Gabon sent Fly Brazil a letter challenging jurisdiction and service of process as insufficient under the Foreign Sovereign Immunities Act of 1976, *as amended,* 28 U.S.C. §§ 1330, 1391(f), 1441(d), and 1602–1611.

On November 14, 2008, Fly Brazil filed its Motion to File Amended Verified Complaint and Memorandum of Law in the state case, which the state court granted on November 26, 2008, deeming the Verified Amended Complaint to have been filed as of November 14, 2008. *See* D.E. 1 at 2, 7–8. Like the original Verified Complaint, the Verified Amended Complaint named Gabon and Wells Fargo as Defendants, but it also named Afrijet Business Service ("Afrijet") as a third Defendant. *See id.* at

7. The Verified Amended Complaint alleged one count each of breach of contract against Gabon and Afrijet, as well as a count against both Gabon and Afrijet seeking a writ of attachment of the Aircraft, again contended by Fly Brazil to be located at that time in the Commonwealth of Virginia. *See* D.E. 2–1. As Fly Brazil alleged no counts against Wells Fargo, Fly Brazil ultimately filed a Notice of Voluntary Dismissal as to Defendant Wells Fargo Bank Northwest, leaving Defendants Gabon and Afrijet as the only Defendants. *See* D.E. 1 at 27.

The state court issued a summons to Gabon on January 1, 2009. D.E. 1 at 2. On January 9, 2009, Fly Brazil again unsuccessfully attempted to serve Gabon. *Id.; see also* D.E. 6 at 1, D.E. 8. According to Gabon, that service package was defective under the FSIA because it failed to include a Notice of Suit, it was dispatched by Fly Brazil instead of by the Clerk of Court, it was served on the Presidential Office for the Republic of Gabon instead of the Ministry of Foreign Affairs, it did not include a complete French translation of the Verified Amended Complaint, and it contained the Verified Complaint instead of the Verified Amended Complaint. D.E. 28 at 4–5.

Defendant Gabon then removed the case to this Court on February 13, 2009. *See* D.E. 1. After Gabon moved to quash service of the Verified Amended Complaint, *see* D.E. 2, Fly Brazil conceded that it had not effected proper service. *See* D.E. 6. Consequently, Gabon and Fly Brazil agreed that Fly Brazil would consent to the quashing of service and Fly Brazil would have another ninety days in which to make service on Gabon. *See* D.E. 7. In accordance with the parties' expressed desires, on April 8, 2009, the Court granted Gabon's Motion to Quash Service [D.E. 2] and provided Fly Brazil until July 3, 2009, by which to effect proper service of the

Verified amended Complaint on Gabon. *See* D.E. 8. In so doing, the Court warned, "Failure of Plaintiff to comply with the terms and conditions of this Order shall result in the dismissal of Defendant ... Gabon ..., without prejudice, and without further notice of hearing." *Id.* at 2.

In an attempt to comply with the Court's Order requiring service by July 3, 2009, on June 16, 2009, Fly Brazil sent its service package for Gabon by Federal Express. *See* D.E. 11 at 4. Although Federal Express indicated that it would make delivery of the package to Gabon by June 19, 2009, as of June 26, 2009, due to misrouting on the part of Federal Express, Federal Express still had not been able to complete delivery. *See id.* at 4–5. As the delivery error resulted from Federal Express's mistake, the Court extended the deadline for effecting service to July 17, 2009. *See* D.E. 12. As it turns out, Federal Express did, in fact, complete delivery of the package to Gabon on June 26, 2009. *See* D.E. 16 at 5. Fly Brazil likewise caused delivery of the service package to Afrijet on June 26, 2009. *See* D.E. 13.

Apparently as a result of a change in government, Gabon has been unable to locate the service package since its delivery. *See* D.E. 28 at 6–7 & 7 n. 7. Fly Brazil has similarly been unsuccessful in attempting to locate a complete and exact copy of all documents included in the package sent to Gabon. D.E. 32 at 2. Nevertheless, the parties appear to agree, more or less, regarding the contents of the package. *See* D.E. 28 at 7; D.E. 32 at 2; D.E. 34 at 2. These include the following:

(1) a Notice of Suit and Alias Summons addressed to Gabon, in both English and French;

(2) the Verified Amended Complaint and what appear to be Exhibits A and B, in English;[2]

(3) the Verified Amended Complaint, without the exhibits, in French; and

(4) a copy of 28 U.S.C. § 1608.

D.E. 34 at 2–3; D.E. 32 at 2, 6.

With regard to the manner in which Fly Brazil sent the service package to Brazil, Jesus Garcia, the office manager of Max Fly Aviation, a Florida corporation assisting Fly Brazil in the litigation, recounts in his Declaration that after he assembled the service package, he personally delivered it to the Clerk's Office for this Court, located at 299 E. Broward Blvd., Fort Lauderdale, Florida. D.E. 32 at 6. At the Clerk's Office, Mr. Garcia asserts, he explained to the deputy clerk that the packet had to be dispatched by the Clerk's Office to the Ministry of Foreign Affairs of the Government of Gabon. *Id.* at 7. Two deputy clerks responded, however, that the Clerk's Office could not dispatch the package directly to the Government of Gabon. *Id.* Instead, Mr. Garcia relates, the Clerk's Office employees stated that they would prepare and seal the envelope, but Mr. Garcia would have to take it to a Federal Express office. *Id.* Accordingly, a deputy clerk placed the original summons and the complete package in the Federal Express envelope and sealed it. *Id.* She then put a stamp on the outside of the package and provided the package to Mr. Garcia, who, in turn, took it to a Federal Express office in Sunrise, Florida, for delivery. *Id.; see also* D.E. 10, Ex. B.

On September 25, 2009, Gabon filed its pending Motion to Quash, alleging insufficient process and insufficient service of process. *See* D.E. 28. More specifically,

---

2. Gabon contends that what appear to be Exhibits A and B to the Verified Amended Complaint are not "clearly identified as such." D.E. 34 at 2–3. Fly Brazil, however, describes this part of the package enclosure as "Verified Amended Complaint, together with Exhibits A and B thereto."

Gabon contends that Fly Brazil has failed to comply strictly with the FSIA, both in the contents of the service package and in the manner in which Fly Brazil sought to serve the service package. *Id.* In this regard, Gabon alleges that Fly Brazil failed to (1) include the entire FSIA; (2) provide French translations of Exhibits A and B to the Verified Amended Complaint; and (3) cause the Clerk of the Court to dispatch the service package. *See* D.E. 28; D.E. 34 at 1–2.

In response, Fly Brazil argues both the contents of the service package sent to Gabon and the manner in which it was served satisfy the requirements of the FSIA. D.E. 32. Thus, Fly Brazil requests that the Court deny Gabon's Motion to Quash or, in the alternative, allow Fly Brazil an additional thirty days within which to effect service. *Id.*

### Analysis

■ Defendant Gabon invokes Rules 12(b)(4) and (5), Fed.R.Civ.P., in seeking to quash Fly Brazil's most recent attempt to effect service on Gabon. D.E. 28 at 1. Rules 12(b)(4) and (5) require a party to file a motion asserting defenses of insufficient process and insufficient service of process, respectively, before filing a pleading responsive to a complaint, should a party wish to invoke such a defense. A party objecting to the sufficiency of process under Rule 12(b)(4) "must identify substantive deficiencies in the summons, complaint or accompanying documentation." *Hilaturas Miel, S.L. v. Republic of Iraq,* 573 F.Supp.2d 781, 796 (S.D.N.Y. 2008) (citations omitted).

■ Similarly, a party challenging sufficiency of service of process must specify the particular way or ways in which the serving party failed to satisfy the service-of-process rules. *Sapp v. The Roman Catholic Archbishop of Portland in Oregon,* 2008 WL 1849915, *1 (D.Or. Apr. 22, 2008) (citing *O'Brien v. R.J. O'Brien &*

*Assoc.,* 998 F.2d 1394, 1400 (7th Cir.1993)). Once it does so, however, the plaintiff bears the burden of proving adequate service of process. *Sanders v. Fluor Daniel, Inc.,* 151 F.R.D. 138, 139 (M.D.Fla.1993) (citing *Systems Signs Supplies v. U.S. Dep't of Justice,* 903 F.2d 1011, 1013 (5th Cir.1990) (citations omitted)); *see also Sapp,* 2008 WL 1849915 at *1 (citing *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir.2004)); *see also Hilaturas,* 573 F.Supp.2d at 796 (citation omitted).

### 1. The Statutory and Regulatory Framework

In evaluating the sufficiency of process and service of process, the Court looks to Rule 4, Fed.R.Civ.P., generally, and, in the case of service on a foreign state, to Rule 4(j)(1), Fed.R.Civ.P., in particular, which provides, "A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Section 1608, in turn, states, in relevant part,

(a) Service in the courts of the United States … shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official

language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, ...

\* \* \*

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

\* \* \*

(c) Service shall be deemed to have been made—

\* \* \*

(2) ... as of the date of receipt indicated in the certification signed and returned postal receipt, or other proof of service applicable to the method of service employed.

28 U.S.C. § 1608.

The Secretary of State has promulgated 22 C.F.R. § 93.2 to articulate the necessary ingredients of sufficient "notice of suit" under Section 1608. As relevant to the objections that Gabon raises, Section 93.2 requires a party to "attach, as part of the Notice of suit, a copy of the Foreign State Immunities Act of 1976 (Pub.L. 94–583; 90 Stat. 2891)."[3] *Id.*

■ The FSIA sets forth the "sole basis for obtaining jurisdiction over a foreign state in U.S. courts." *Ben–Rafael v. Islamic Republic of Iran*, 540 F.Supp.2d 39, 52 (D.D.C.2008) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989)). In effecting service on a foreign state under the FSIA, a party must comply strictly with the requirements of 28 U.S.C. 1608(a). *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.Cir.1994); *Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 253 (7th Cir.1983); *Lewis & Kennedy, Inc. v. Permanent Mission of the Rep. of Botswana to the United Nations*, 2005 WL 1621342, \*3 (S.D.N.Y. July 12, 2005) (quoting *Finamar Investors Inc. v. Rep. of Tadjikstan*, 889 F.Supp. 114, 117 (S.D.N.Y. 1995) and citing *Gray v. Permanent Mission of the People's Rep. of the Congo to the United Nations*, 443 F.Supp. 816, 819–20 (S.D.N.Y.1978), *aff'd*, 580 F.2d 1044 (2d Cir.1978); *Magness v. Russ. Fed'n*, 247 F.3d 609, 615 (5th Cir.2001); *Transaero, Inc. v. La Fuerza Aerea Bol.*, 30 F.3d 148, 154 (D.D.C.1994); *Gerritsen v. Consulado Gen. de Mex.*, 989 F.2d 340, 345 (9th Cir. 1993)). As at least one court has observed, "the FSIA is a reciprocal statute and the United States would expect no less were the facts reversed." *Lewis & Kennedy, Inc. v. Permanent Mission of the Rep. of Botswana to the United Nations*, 2005 WL 1621342 at \*5.

Besides the policy considerations, the statutory structure of the FSIA demonstrates congressional intent that the service requirements of Section 1608(a) of the FSIA be complied with strictly. Unlike 28 U.S.C. § 1608(b), which addresses service on foreign agencies and instrumentalities (as opposed to foreign states) and expressly authorizes a specified form of service for such entities that is "reasonably calculated to give actual notice," *see* 28 U.S.C.

---

**3.** Although Section 93.2(e) specifies that the party shall attach "a copy of the Foreign State Immunities Act of 1976," the Court understands the use of the word "State" to constitute a scrivener's error. First, the Court has been unable to find a Foreign State Immunities Act of 1976. Moreover, the remainder of the provision makes clear that the regulation requires the appending of the Foreign *Sovereign* Immunities Act of 1976. In this respect, Section 93.2(e) expressly cites Pub.L. 94–583 and 90 Stat. 2891, the citations for the Foreign Sovereign Immunities Act of 1976.

§ 1608(b)(3); *see also Transaero, Inc.*, 30 F.3d at 154, Section 1608(a), which pertains to service on foreign states, includes no such provision. *See* 28 U.S.C. § 1608(a); *see also Transaero, Inc.*, 30 F.3d at 154. Moreover, the House of Representatives Committee Report on the FSIA states that Section 1608(a) " 'sets forth the exclusive procedures for service on a foreign state,' but contains no such admonition for section 1608(b)." *Transaero, Inc.*, 30 F.3d at 154 (quoting H.R.Rep. No. 1487 at 24, *reprinted in* 1976 U.S.C.C.A.N. at 6623). As the *Transaero* Court has reasoned, "The distinction is neatly tailored to the differences between 'foreign states' and 'agencies or instrumentalities.' The latter, typically international commercial enterprises, often possess a sophisticated knowledge of the United States legal system that other organs of foreign governments may lack." *Id.* (citation omitted).

### 2. The Inadequacy of the Service Package

▮▮▮ Thus, the Court considers whether Fly Brazil has demonstrated that it has strictly complied with 28 U.S.C. § 1608(a) both in service of process and in process, beginning with Gabon's claim under Rule 12(b)(4) involving allegations that Fly Brazil's service package failed to include the essential minimum requirements. In determining the correct process, the Court notes that the provisions for service under Section 1608(a) are hierarchical, and a plaintiff must attempt the methods of service in the order in which they appear in the statute. *Magness*, 247 F.3d at 612–13; *see also* H.R. Rep. 94–1487, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6623. Here, Section 1608(a)(1) does not apply because no service agreement or arrangement existed between Fly Brazil and Gabon. *See* D.E. 28 at 10 n. 11. Nor does Section 1608(a)(2) govern service in this case because Gabon

is not a member of any applicable convention on service of judicial documents. *Id.*

That brings the Court to Section 1608(a)(3). Under this section, a service package must include a "copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state," *see* 28 U.S.C. § 1608(a)(3), in the case of Gabon, French. *See* D.E. 28 at 11. Among other requirements, the notice of suit, in turn, must attach a copy of the FSIA. 22 C.F.R. § 93.2.

In the pending matter, the service package contained a Notice of Suit and Alias Summons addressed to Gabon, in both English and French; the Verified Amended Complaint, in English and French, Exhibits A and B, in English; and a copy of 28 U.S.C. § 1608. Gabon asserts that this package was deficient in that Exhibits A and B were not translated into French, in addition to being provided in English, and Section 1608 does not constitute the entirety of the FSIA. This Court agrees.

Beginning with the FSIA, this statute is composed of 28 U.S.C. §§ 1330, 1391(f), 1441(d), and 1602–1611. *See* Pub.L. 94–583; 90 Stat. 2891. Indeed, the Annex to 22 C.F.R. § 93.2 expressly notes that the FSIA "appears in sections 1330, 1391(f), 1441(d), and 1602 through 1611, of Title 28, United States Code. . . ." 22 C.F.R. § 93.2, Annex 9. Additionally, the portion of Section 93.2 that imposes the requirement that the serving party attach a copy of the FSIA specifies that the FSIA is Pub.L. 94–583; 90 Stat. 2891. *See* 22 C.F.R. § 93.2(e). To enact the FSIA, Pub.L. 94–583; 90 Stat. 2891, in turn, directed the amendment of Title 28 by adding each of the designated sections. Section 1608 comprises but one part of the FSIA.

Nor can the exclusion of all parts of the FSIA except for Section 1608 satisfy a party's compliance obligations under Sec-

tion 1608(a) and 22 C.F.R. § 93.2. As previously explained, strict adherence to the requirements of Section 1608(a) is necessary. Moreover, Paragraph 9 of the Annex to Section 93.2, which sets forth the form of the notice of suit required by Section 1608(a), states, "Questions relating to state immunities and to the jurisdiction of United States courts over foreign states are governed by the [FSIA]." 22 C.F.R. § 93.2, Annex, 9. Section 1608 does not address state immunities at all, and it deals only with limited issues pertaining to jurisdiction. Thus, a foreign state receiving a service package that lacks the other portions of the FSIA will have no immediate reference to the immunity and many of the jurisdictional provisions and defenses it would otherwise have received had service complied with Section 93.2. Such a situation fails to accomplish Congress's expressed purpose in requiring the notice of suit: "A 'notice of suit' … would advise a foreign state of the legal proceeding, it would explain the legal significance of the summons, complaint and service, and *it would indicate what steps are available under or required by U.S. law in order to defend the action.* In short, it would provide an introductory explanation to a foreign state that may be unfamiliar with U.S. law or procedures." H.R. Rep. 94–1487, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6623 (emphasis added). For this reason alone, the process in this case was not adequate.

■ Additionally, however, the failure to translate Exhibits A and B into French departs from the requirements of Section 1608(a)(3), which instruct that a service package contain a copy of the complaint in English and in the official language of the foreign state. Under Rule 10(c), Fed. R.Civ.P., "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The language of this rule is broad and unqualified. Moreover, the Verified Amended Complaint itself asserts that Exhibits A and B are "made a part" of the Verified Amended Complaint. *See* D.E. 2–1 at 5, 7–8. By not including a French translation of the exhibits incorporated into the Verified Amended Complaint, Fly Brazil did not comply with Section 1608(a)(3)'s requirement that it provide a copy of the complaint translated into the official language of the foreign state. Consequently, the process must fail for this independent reason. In view of the fact that Fly Brazil's service package failed to meet the minimum requirements of Section 1608(a), and, accordingly, those of Rule 4(j), Fed.R.Civ. P., I respectfully recommend that the Court grant Gabon's Motion to Quash.

### 3. The Inadequacy of the Service

■ Although granting Gabon's Motion to Quash for insufficiency of the service package would moot the need to consider whether Fly Brazil's service sufficed in this case, in the interest of thoroughness, the Court reviews the adequacy of Fly Brazil's manner of service. Section 1608(a)(3) instructs that the service package is "to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3).

In this case, Jesus Garcia, who attempted to facilitate service on behalf of Fly Brazil, has indicated that he delivered the service package to the Clerk's Office at this courthouse. D.E. 32 at 6. Although Mr. Garcia avers that he "explained to the deputy clerk that the packet had to be dispatched by the Clerk's Office to the ministry of foreign affairs of The Government of Gabon," the Clerk's Office responded that it could not dispatch the package directly to Gabon. *Id.* at 7. Instead, Mr. Garcia states, the Clerk's Office prepared, sealed, and stamped the envelope, but instructed Mr. Garcia that he had

to drop the package off at a Federal Express office, which Mr. Garcia then did. *Id.; see also* D.E. 16 at 5.

Fly Brazil suggests that although its agent took the service package from the Clerk's Office to the Federal Express Office in Sunrise for delivery by Federal Express, Fly Brazil, nonetheless, complied with Section 1608(a)(3)'s requirement that the Clerk dispatch the service package. *See* D.E. 32. While the Court can appreciate the dilemma in which Mr. Garcia believed himself to be,[4] this method of dispatch does not comport with the strict compliance demanded by Section 1608(a).

The Court commences its consideration of the dispatch requirement "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972–73 (11th Cir. 2000) (*en banc*) (citations omitted). Here, the statute directs that the service package is "to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3). By the plain words of the statute, the clerk's action of addressing alone does not suffice; the clerk must also dispatch the package to the head of the ministry of foreign affairs. "Dispatch" means "to send off or away;—particularly applied to sending off messengers, messages, letters, etc., on special business, and implying haste." *http://www.dictionary.net/dispatch* (citing *Webster*). In other words, the statute charges the clerk with the physical action of sending the service package to the head of the ministry of foreign affairs.

In this case, that did not happen; rather, Fly Brazil acted as an intermediary between the Clerk's Office and the courier. Thus, an interested party—not the United States Courts' impartial agent—was the last entity to touch the service package before the courier delivered the package to its destination. A primary aim of the FSIA seeks "to minimize potential irritants to relations with foreign states." H.R. Rep. 94–1487, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6609. Indeed, the hierarchical structure of Section 1608(a)'s service provisions reflects congressional concern that dealings with foreign countries comply with certain protocols. A party's involvement in the actual dispatch of the service package, however modest in nature, conflicts with this concern and with the express words of Section 1608(a). Particularly in view of the requirement for strict compliance with Section 1608(a), *see supra*, service in this case was not adequate, and Gabon's Motion to Quash should be granted.

### *CONCLUSION*

For the foregoing reasons, I recommend that the Court **GRANT** Defendant the Government of Gabon, Africa's Motion to Quash Plaintiff Fly Brazil Group, Inc.'s Third Service Attempt of the Verified Amended Complaint for Insufficient Process and Insufficient Service of Process [D.E. 28] and either dismiss the action or require Plaintiff Fly Brazil to effect proper service within a specified period.

The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and

---

4. The Clerk's Office has advised the Court that it can, in fact, dispatch service packages pursuant to Section 1608, but the sender must be prepared with a Federal Express account number to which the Clerk's Office may charge the Federal Express service.

shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993); *Lo-Conte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc* );[5] 28 U.S.C. § 636(b)(1).

---

**5.**  Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.,* 667 F.2d 33, 34 (11th Cir.1982).