**TRANSAERO, INC., Appellee,**

v.

**LA FUERZA AEREA BOLIVIANA,**
**Appellant.**

No. 92–7222.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 24, 1994.

Decided July 29, 1994.

James W. Shannon, Jr., Washington, DC, argued the cause for appellant. With him on the briefs was Gregory B. Craig, Washington, DC.

Ronald N. Cobert, Washington, DC, argued the cause for appellee. With him on the brief was Andrew M. Danas, Washington, DC. Joseph M. Roberts, Washington, DC, entered an appearance.

On the brief for amicus were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., Douglas Letter, U.S. Dept. of Justice, and Linda Jacobson, U.S. Dept. of State, Washington, DC.

Before MIKVA, Chief Judge, and WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Chief Judge MIKVA.

SENTELLE, Circuit Judge:

Transaero, Inc., a New York corporation, obtained a default judgment against La Fuerza Aerea Boliviana ("the Bolivian Air Force") in the Eastern District of New York and registered the judgment in the district court for the District of Columbia. The Bolivian Air Force moved for summary judgment, claiming that the district court in New York lacked personal jurisdiction because the default judgment had been obtained without the service of process required by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611 (1988) ("the Act"). The Bolivian Air Force contended that because it is a "foreign state or political subdivision of a foreign state" within the meaning of section 1608 of the Act, Transaero had served it improperly. The district court held instead that the Bolivian Air Force is an "agency or instrumentality" of Bolivia under the service provisions of section 1608, so that Transaero's method of service gave the New York court jurisdiction. The Bolivian Air Force has taken an interlocutory appeal from the

order. *See Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990) (denial of a claim of sovereign immunity is an immediately appealable collateral order).

We hold that the Bolivian Air Force is a "foreign state or political subdivision" within the meaning of section 1608 and that Transaero's method of service was defective. We therefore reverse and remand with directions to dismiss.

## I.

Transaero sold aviation parts to the Bolivian Air Force throughout the early 1980s. In 1988, Transaero filed a complaint in the Eastern District of New York that alleged breach of contract and sought $983,696.60 in damages. On September 15, 1988, the Clerk of Court dispatched translations of the summons and complaint to the Bolivian Air Force in La Paz, Bolivia by registered mail with a return receipt requested. The Bolivian Air Force received the summons and complaint and sent a return receipt to the Clerk on September 23, 1988. The Bolivian Air Force made no appearance, and Judge Mishler scheduled a hearing on Transaero's motion for default judgment for March 30, 1989. Transaero sent notice of the hearing to the Bolivian Air Force, to the Bolivian First Minister in La Paz, Bolivia, and to the Bolivian Ambassador and Consul General in Washington. When the Bolivian Air Force failed to appear at the hearing, Judge Mishler granted the motion for default judgment. The court found that service had been properly effected under section 1608(b), but made no findings on the adequacy of service under 1608(a). The court also held that it had subject matter jurisdiction over the contract claim under section 1605(a)(2) of the Act, which creates an exception to the general rule of sovereign immunity for claims arising

from "commercial activities" conducted by foreign states.

In 1991, Transaero registered the default judgment in the district court for the District of Columbia under 28 U.S.C. § 1963 (Supp. IV 1992) and served a set of interrogatories under Federal Rule of Civil Procedure 69. The Bolivian Air Force entered an appearance and moved to quash the interrogatories and dismiss the proceedings, arguing that the District Court for the Eastern District of New York lacked jurisdiction because the Bolivian Air Force had not been served in compliance with section 1608(a) of the Act. In an order dated September 25, 1992, the District Court for the District of Columbia denied the motion. The court found that Transaero had originally served the Bolivian Air Force under section 1608(b); that the Bolivian Air Force received actual notice of Transaero's lawsuit; and that the Bolivian Air Force was notified by mail of the hearing on Transaero's motion for default judgment. The court then ruled that, as a matter of law, the Bolivian Air Force is an "agency or instrumentality" of Bolivia and that service under section 1608(b) was proper.

After the Bolivian Air Force's motion for summary judgment was denied, Transaero requested an order compelling the Bolivian Air Force to answer its interrogatories. The judge in charge of the case passed away and that motion apparently has never been resolved. On May 12, 1993, the Bolivian Air Force requested the Eastern District of New York to set aside the default judgment on the ground that it had been procured through fraudulent representations of fact. The court denied the motion, the Bolivian Air Force appealed the denial to the Second Circuit, and the Second Circuit affirmed. *See Transaero, Inc. v. La Fuerza Aerea Boliviana,* 24 F.3d 457 (2d Cir.1994).[1]

---

1. The Second Circuit noted that the district courts in New York and the District of Columbia had held that the Air Force was properly served, but also noted the pending appeal that we decide today. *See id.* at n. 1. We do not consider whether the Eastern District's ruling might bar the Air Force's attack on personal jurisdiction, for Transaero did not assert any form of preclu-

sion in the District Court for the District of Columbia, and we have generally refused to raise the question *sua sponte. See Nixon v. United States,* 978 F.2d 1269, 1274 n. 16 (D.C.Cir.1992); *Taxation with Representation v. Regan,* 676 F.2d 715, 717 n. 1 (D.C.Cir.1982), *rev'd on other grounds,* 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983).

## II.

### A.

█ Under the Act, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). The Bolivian Air Force admits that the New York court had subject matter jurisdiction under the "commercial activities" provision of section 1605(a)(2). It claims only that Transaero's service failed to comply with sections 1603 and 1608 of the Act. Section 1603 provides:

> (a) A "foreign state", *except as used in section 1608 of this title,* includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>
> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States ..., nor created under the laws of any third country.

28 U.S.C. § 1603 (emphasis added). Section 1608 does not further define either term. Section 1608(a) establishes certain requirements for service on "a foreign state or political subdivision of a foreign state," while section 1608(b) establishes different requirements for service on "agencies or instrumentalities" of foreign states.

### B.

The nub of the dispute is whether the Bolivian Air Force counts as a "foreign state" or rather as an "agency or instrumentality" under section 1608. That in turn depends

upon whether the Bolivian Air Force is a "separate legal person, corporate or otherwise" under section 1603(b)(1).[2] The words in themselves are opaque. Some district courts have sought to illuminate them by balancing three "characteristics" of separate legal status: whether, under the law of the foreign state where it was created, the entity can sue and be sued in its own name, contract in its own name, or hold property in its own name. *Bowers v. Transportes Navieros Ecuadorianos,* 719 F.Supp. 166, 170 (S.D.N.Y.1989); *see also Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 398, 400 (E.D.Va.1984). But other courts have thought the distinction is instead a categorical one, and depends on whether the defendant is the type of entity "that is an integral part of a foreign state's political structure, [or rather] an entity whose structure and function is predominantly commercial." *Segni v. Commercial Office of Spain,* 650 F.Supp. 1040, 1041–42 (N.D.Ill.1988). The *amicus curiae* brief of the United States in this case proposes a similar test that looks to the "core function" of the foreign governmental body at issue. *See* Br. of United States at 12–13, 16.

█ We think that the categorical approach adopted in *Segni* and urged, in a somewhat different form, by the United States—whether the core functions of the foreign entity are predominantly governmental or commercial—best captures the statutory meaning. Congress spoke against a rich background of federal and international law that colors the statutory terms and fills them out. The Supreme Court has held that the Act largely codifies the "restrictive" theory of sovereign immunity, under which "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 487, 103 S.Ct. 1962, 1968, 76 L.Ed.2d 81 (1983). *See also Republic of Argentina v. Weltover, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2160, 2165, 119 L.Ed.2d 394 (1992). Thus the Act repealed

---

**2.** Both parties agree that the Air Force falls within the other components of the definition in

§§ 1603(b)(2) and (b)(3).

foreign immunity for "commercial activities," § 1605(a)(2), but preserved it for inherently sovereign or public acts. *See Saudi Arabia v. Nelson,* — U.S. —, —, 113 S.Ct. 1471, 1479, 123 L.Ed.2d 47 (1993); *Weltover,* — U.S. at —, 112 S.Ct. at 2166. The distinction between foreign states and their instrumentalities establishes two categories of actors that correspond to the restrictive theory's two categories of acts.

Besides section 1608, the distinction appears in the venue provisions of 28 U.S.C. § 1391 (1988). Section 1391(f) makes the federal district court for the District of Columbia the venue for civil actions against foreign states and their subdivisions; but it allows venue in suits against an agency or instrumentality of a foreign state "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business," § 1391(f)(3), a provision of doubtful coherence if extended beyond the category of commercial enterprises. Moreover the phrase "agency or instrumentality," or some close variant, is commonplace in the enabling charters of government corporations, both in the United States and abroad. The statute that created the Panama Railroad Company labelled it an "agency and instrumentality of the United States." *See Panama Railroad Company Act,* ch. 706, 62 Stat. 1076 (1948), at § 245. *See also United States ex rel. Skinner & Eddy Corp. v. McCarl,* 275 U.S. 1, 5, 6, 8, 48 S.Ct. 12, 13, 14, 14–15, 72 L.Ed. 131 (1927) (referring to the United States Shipping Board Emergency Fleet Corporation as "an instrumentality of the Government," an "incorporated agenc[y]," and a "[g]overnment-owned private corporation[ ]").

The courts that have construed "agency or instrumentality" to reference the defendant's powers under foreign law have relied principally on the House Report on the Act, which said:

> [The] criterion, that the entity be a separate legal person, is intended to include a corporation, association, foundation, or any other entity which, under the law of the foreign state where it was created, can sue or be sued in its own name, contract in its own name or hold property in its own name.... As a general matter, entities which meet the definition of an "agency or instrumentality of a foreign state" could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name.

H.R.REP. No. 1487, 94th Cong., 2d Sess. 15–16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614.

Without debating the legitimacy of reliance upon legislative history in other circumstances, we note that this Report is at odds with itself. All the specific examples recited fall into the category of public commercial enterprises; but the Report also states a general test that might bar those very examples and might also sweep well beyond them. The United States points out that any nation may well find it convenient (as does ours) to give powers of contract and litigation to entities that on any reasonable view must count as part of the state itself. *See* Br. of United States, at 7–8 (noting that under the House Report test the Departments of State and of Defense would count as "instrumentalities" of the United States). We adopt today an analysis designed to winnow the applications Congress desired from the ones it meant to exclude.

A final reason to favor the categorical approach is ease of administration in the district courts. Service of process should be the prologue to the suit rather than the central drama. When the adequacy of service is made to turn on a complex inquiry carried out long after the litigation has begun, and in which the court must apply foreign law to foreign facts, the service provisions may derail cases rather than ensuring their prompt and orderly commencement. The case before us paints the dangers of section 1608 in somber tones. Today we must face the possibility that an attempt at service made six years ago was defective—a result we seek to forestall in future cases by tying service to the obvious functions, rather than the uncertain powers, of the foreign defendant. The

district courts have perforce acquired expertise in delineating the categories of "governmental" and "commercial" under the immunity provisions of the Act, and if section 1608 is construed to turn on a similar distinction that expertise will benefit all concerned.

### C.

■ The question, then, is whether the core functions of the armed forces of a foreign sovereign are governmental or commercial. We hold that armed forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the "foreign state" itself, rather than a separate "agency or instrumentality" of the state. The "powers to declare and wage war" are among the "necessary concomitants" of sovereignty. *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 318, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936). Since the passage of the Foreign Sovereign Immunities Act, the two federal cases to squarely consider the question have held that a foreign military force is a "foreign state" rather than an "agency or instrumentality of a foreign state." *See Marlowe v. Argentine Naval Comm'n*, 604 F.Supp. 703, 707 (D.D.C. 1985); *Unidyne*, 590 F.Supp. at 400.[3] Apart from authority it is hard to see what would count as the "foreign state" if its armed forces do not. Any government of reasonable complexity must act through men organized into offices and departments. If a separate name and some power to conduct its own affairs suffices to make a foreign department an "agency" rather than a part of the state itself, the structure of section 1608 will list too far to one side. We hold that the armed forces of a foreign sovereign are the "foreign state" and must be served under section 1608(a).

### III.

■ As relevant here, section 1608(a) requires that service on foreign states be made

(3) ... by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) ... by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington....

28 U.S.C. §§ 1608(a)(3)–(a)(4).

Both district courts to hear the case found that Transaero effected service under section 1608(b). The record reveals that Transaero never attempted the methods of service prescribed in sections 1608(a)(3) and (a)(4), electing instead to serve the Bolivian Ambassador and Consul General in Washington, and the Bolivian First Minister and the Bolivian Air Force in La Paz—but never the Ministry of Foreign Affairs or the Secretary of State.[4] Before this court, Transaero does not claim that it strictly complied with section 1608(a), but rather asks that we pronounce the attempted service sufficient because the Bolivian government received actual notice of the suit.

The authorities generally hold that section 1608(b) may be satisfied by technically faulty service that gives adequate notice to the foreign state. *See Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246, 1250 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993); *Velidor v. L/P/G Benghazi*, 653 F.2d 812, 821–22 (3d Cir.1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982); *Harris Corp. v. Na-*

---

**3.** In *Behring International, Inc. v. Imperial Iranian Air Force*, 475 F.Supp. 383, 389 (D.N.J.1979), *aff'd in part,* 699 F.2d 657 (3d Cir.1983), the court allowed service on the Iranian Air Force under § 1608(b), but gave no reasons as the defendant did not contest the service. *See Unidyne*, 590 F.Supp. at 400 n. 1.

**4.** Transaero's brief states that the Ministry of Foreign Affairs was "provided with copies of the default judgment and underlying documents" in the fall of 1991. *See* Appellee's Br. at 6. The record, even the pages to which Transaero refers, shows no such thing.

*tional Iranian Radio and Television,* 691 F.2d 1344, 1352 (11th Cir.1982). In cases under section 1608(a), however, the decisions have rarely excused defective service. *See Gerritsen v. Consulado General de Mexico,* 989 F.2d 340, 345 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1994) (service inadequate for failure to include translation of complaint); *Alberti v. Empresa Nicaraguense De La Carne,* 705 F.2d 250, 253 (7th Cir.1983) (holding that service on Ambassador did not satisfy § 1608(a) requirement of service on "head of the ministry of foreign affairs"). *But see Marlowe,* 604 F.Supp. at 708 (using "substantial compliance" test under 1608(a)).

Leniency in this case would disorder the statutory scheme. The Committee Report states that section 1608(a) "sets forth the exclusive procedures for service on a foreign state," but contains no such admonition for section 1608(b). *See* H.R.REP. No. 1487 at 24, *reprinted in* 1976 U.S.C.C.A.N. at 6623. Section 1608(b)(3) allows simple delivery "if reasonably calculated to give actual notice," showing that Congress was there concerned with substance rather than form; but the analogous subsection of section 1608(a) says nothing about actual notice. The distinction is neatly tailored to the differences between "foreign states" and "agencies or instrumentalities." The latter, typically international commercial enterprises, often possess a sophisticated knowledge of the United States legal system that other organs of foreign governments may lack. *Cf. Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1546 (D.C.Cir.1987) (in suit against foreign state, the rule that objections to personal jurisdiction are waived by an appearance should be sparingly applied because of foreign unfamiliarity with legal process). Thus section 1608(a) mandates service of the Ministry of Foreign Affairs, the department most likely to understand American procedure. We hold that strict adherence to the terms of 1608(a) is required. As Transaero failed to do so, the Bolivian Air Force was not properly served.

### IV.

The Eastern District of New York lacked personal jurisdiction, and the default judgment registered in the District of Columbia was therefore void and unenforceable. We reverse and remand with directions to dismiss the proceedings.

*It is so ordered.*

MIKVA, Chief Judge, dissenting:

The majority's standard for differentiating between those entities that are "foreign states" and those that are "agencies or instrumentalities" of foreign states under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11, is attractive on administrability grounds. But I fear that in formulating their interpretation my colleagues have placed efficiency concerns—and perhaps their international policy preferences—above the apparent meaning of the statute. Because this case requires us to interpret Congress's enactment, and not to devise common-law rules, I think the majority's approach is insufficiently deferential to the legislature. I therefore—reluctantly—dissent.

Before discussing the FSIA itself, it bears mentioning that another court—the United States District Court for the Southern District of New York (Mishler, J.)—has already decided the issue at hand. On April 28, 1989, Judge Mishler rendered a default judgment in this case against the Bolivian Air Force, La Fuerza Aerea Boliviana ("La Fuerza"). That judgment subsequently survived an appeal grounded upon plaintiff's alleged fraudulent misrepresentations to the court. *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 24 F.3d 457 (2d Cir.1994). As a necessary element of the original default judgment, Judge Mishler found that La Fuerza, "an instrumentality of the Republic of Bolivia," received proper service of process under FSIA § 1608(b), which applies only to "an agency or instrumentality of a foreign state." 28 U.S.C. § 1608(b). Although it did not decide the issue, the Second Circuit acknowledged Judge Mishler's finding on appeal. 1994 Westlaw 197941 at n. 1.

Although I agree with my colleagues that Judge Mishler's ruling that service was proper does not preclude us from finding to the

contrary, *see* maj. op. at 150 n. 1, such a finding would clash with the prevailing Second Circuit law on the facts of this case. Admittedly, the absence of analysis in Judge Mishler's and the Second Circuit's opinions limits their precedential effect on this issue. Nonetheless, a reversal here creates a disagreement in the result. We tell the parties that the statute compels one result; federal courts in another jurisdiction tell the same parties that the same statute compels the opposite result. Between us, we have thoroughly muddled the law. This is the functional equivalent of a circuit split between our Circuit and the Second; such tension should be avoided if possible.

This tension would cause me far less concern were I convinced by the majority's interpretation of the FSIA. I am not. Despite the majority's able argument, the FSIA and its legislative history suggest no conclusive presumption that a military entity is "a foreign state" and not "an agency or instrumentality" thereof. Instead, the statute lists three factors that define "agency or instrumentality." 28 U.S.C. § 1603(b). The only disputed factor in this case is that the entity must be "a separate legal person." *Id.* § 1603(b)(1). The House Report amplifies the meaning of this phrase: an agency or instrumentality may be "a department or ministry which acts and is suable in its own name." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 15–16 (1976); *see* maj. op. at 152, for a lengthier quote. This suggests to me that any presumption—let alone the conclusive presumption the majority adopts—is disfavored. Instead, every foreign entity starts out on the same footing, and a court must decide whether the particular entity is a separate legal person—that is, whether it "acts and is suable in its own name." I suspect the majority is right that most foreign military entities are not legally separate from their sovereign states, but I think it is contrary to the statute to cast this suspicion in terms of a rule.

Nothing in the language of the statute or in the remainder of its legislative history casts doubt upon the House Report's definition of "separate legal person." But the majority sweeps aside this definition with its speculation that an agency or instrumentality must be a commercial, as opposed to a public, enterprise. Maj. op. at 151. This distinction is nowhere to be found in the statute or legislative history. Indeed, the distinction seems inapt, because the FSIA explicitly creates an exception to the general sovereign immunity of foreign states *and* their agencies and instrumentalities for "commercial activity," 28 U.S.C. § 1605(a)(2), but the statute in no way indicates that a similar test determines "agency" status. The FSIA waives immunity depending on the nature of the activity on which the lawsuit is based, not the nature of the government entity against which the suit is brought. In contrast, for secondary matters (service of process, venue, attachment of property, and punitive damages) the FSIA does distinguish based on the identity of the defendant—it distinguishes between a foreign state and its agencies and instrumentalities. *See* 28 U.S.C. §§ 1391, 1606, 1608, 1610. These are separate distinctions, with different consequences. Yet the majority assumes that the "two categories of actors ... correspond to the ... two categories of acts." Maj. op. at 151. Absent some concrete evidence of statutory intent, I think this is a dangerous assumption.

As its statutory evidence, the majority points to one of the venue provisions of 28 U.S.C. § 1391(f), permitting suits against an agency or instrumentality "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business," 28 U.S.C. § 1391(f)(3), but permitting suits against a foreign state in the United States District Court for the District of Columbia. 28 U.S.C. § 1391(f)(4). What the majority neglects to mention is that § 1391(f)(3) is not exclusive. If the agency or instrumentality is not "doing business," it may be sued "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(f)(1). The venue provision simply recognizes that many agencies and instrumentalities are commercial enterprises that may conveniently defend suits where they do business. It in no way establishes that an

"agency or instrumentality" must always be a commercial enterprise.

The same response applies to the majority's assertion that the House Report "is at odds with itself," maj. op. at 152, because its examples of agencies and instrumentalities tend to be commercial enterprises, while at the same time it seems to adopt a broader general definition of "agency or instrumentality." Again, that many, even most, agencies and instrumentalities may be primarily commercial in nature does not prove that all must be. If Congress meant for commerciality to be a defining characteristic, it could have said so. Instead, Congress said "separate legal person." 28 U.S.C. § 1603(b)(1). In sum, I see no good reason to focus on a distinction between commercial and non-commercial activities as the touchstone of juridical separateness.

Then what *does* it mean to be legally separate? The House Report gives us a sketchy definition: an entity that "acts and is suable in its own name." In keeping with several district court precedents, the court below looked at contracts executed by La Fuerza, apparently in its own name, and at previous lawsuits in which La Fuerza was mentioned by name (admittedly, an ambiguous indicator), to find that La Fuerza is a separate legal person. *Cf. Bowers v. Transportes Navieros Ecuadorianos,* 719 F.Supp. 166, 170 (S.D.N.Y.1989); *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 398, 400 (E.D.Va.1984). Although I would prefer more extensive factfinding with regard to La Fuerza's activities—e.g., property ownership, previous contracting history—I think the district court was on the right track.

I think the language, policy, and legislative history of the FSIA suggest that commercial activity is not the ultimate touchstone for FSIA analysis. It makes more sense to engage in a wider factual inquiry into the actions of the entity to determine whether it is a separate legal person. Because I think the district court was basically correct, and because I would prefer to avoid incongruity with the law of this case in the Second Cir-

cuit, I respectfully dissent from the majority opinion.