**ENRON NIGERIA POWER HOLDING, LTD., Petitioner,**

**v.**

**FEDERAL REPUBLIC OF NIGERIA, Respondent.**

**Case No. 1:13–cv–01106 (CRC)**

United States District Court, District of Columbia.

Signed 07/25/2014

Kenneth Barrett, KRB LAW, Houston, Mark Gibson, Missouri City, TX, for Petitioner.

David Elesinmogun, ELESINMOGUN & EGWUATU LLP, for Respondent.

### MEMORANDUM AND ORDER

CHRISTOPHER R. COOPER, United States District Judge

Enron Nigeria Power Holding, Ltd. ("ENPH") has petitioned the Court to confirm and enforce an $11 million arbitral award against the Republic of Nigeria stemming from Enron's infamous Nigeria barge deal. Nigeria moves to quash service and to dismiss the petition. Because ENPH did not properly serve the petition on Nigeria, despite good faith efforts to do so, the Court will grant Nigeria's motion to quash but permit ENPH to attempt ser-

vice again under the appropriate procedure. The Court reserves judgment on Nigeria's motion to dismiss the petition until proper service has been accomplished.

## I. Background

In December 1999, ENPH entered into a Power Purchase Agreement ("PPA") with the State Government of Lagos, Nigeria and the country's national electric power authority. The Republic of Nigeria guaranteed the agreement. The idea was that ENPH would supply three barge-mounted electricity generating units and later build a gas-fired power plant near Lagos. The project quickly fizzled, however, and Enron's attempts to sell and repurchase its interests in the barges to Merrill Lynch resulted in a number of criminal prosecutions. See United States v. Brown, 459 F.3d 509 (5th Cir. 2006). Perhaps unsurprisingly, the parties were unable to reach agreement over the compensation owed for the aborted venture and submitted their disagreement to the International Chamber of Commerce International Court of Arbitration, Pet. ¶ 10, pursuant to the dispute resolution provisions of the PPA, Pet. Ex. A § 23. The arbitrators eventually awarded ENPH $11,220,000 in damages, plus interest—significantly less than the nearly $473 million ENPH sought—and $870,000 in legal costs and expenses. Pet. Ex. B ¶ 175.

ENPH alleges that, despite its repeated requests, Nigeria has refused to honor the outcome of the arbitration. Pet. ¶ 17. ENPH seeks an order confirming the arbitral award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–13, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 ("the New York Convention"). Pet. ¶ 22. Nigeria disputes both the underlying award as well as

service of the Petition to enforce the arbitral judgment in this Court. With respect to the latter, ENPH asserts that it served the Petition on Nigeria pursuant to the general "Notices" provision of the PPA, which governs the exchange of "[a]ll notices or other communications required or permitted to be given hereunder[.]" Pet. Ex. A. § 22. Nigeria has moved to quash service and dismiss the Petition, arguing that ENPH failed to properly effectuate service under Federal Rule of Civil Procedure 4(j) and the relevant provision of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608. ENPH contends that it complied with Rule 4(j) and the FSIA because the general notice provision of the PPA constitutes a "special arrangement for service" under Section 1608(a)(1).

## I. Legal Standard

FSIA is "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts." Argentine Republic v. Amerada Hess Shipping, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). It confers jurisdiction to district courts where a foreign state "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In order to be subject to jurisdiction, "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j). " 'In accordance with the restrictive view of sovereign immunity reflected in the FSIA,' the defendant bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity." Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (quoting Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985)). Yet, the plaintiff wishing to effect service "has the burden of establishing its validity when

challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of [Federal Rule of Civil Procedure 4] and any other applicable provision of law." Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1083 (1969)).

Section 1608(a) specifies four permissible methods of serving a foreign state or political subdivision:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

The D.C. Circuit has held that "strict adherence to the terms of 1608(a) is required," particularly because "foreign governments may lack" detailed familiarity with the United States legal system. Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 154 (D.C. Cir. 1994). In effecting service pursuant to Section 1608(a) in courts in this district, "a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." Abur v. Republic of Sudan, 437 F.Supp.2d 166, 172 (D.D.C. 2006).

## II. Analysis

### A. Proper Service of a Foreign Government Under 28 U.S.C. § 1608(a)

There is conflicting caselaw in this Circuit regarding the appropriate standard for determining whether a "special arrangement for service" exists under Section 1608(a)(1), the provision under which ENPH claims to have effectuated service on Nigeria. ENPH cites several district court decisions supporting its contention that the general notice provision in the PPA qualifies as a "special arrangement for service." The earliest of the lot is Marlowe v. Argentine Naval Commission, where the Court found that effectuating service pursuant to a general notice provision constituted "substantial compliance" with Section 1608(a)(1), and dismissed as "overly technical" a counterargument that "the contract did not specifically provide for service of legal process." 604 F.Supp.

703, 708 (D.D.C. 1985). The D.C. Circuit subsequently rejected Marlow's "substantial compliance" approach in favor of a "strict adherence" standard. Transaero, 30 F.3d at 154.[1] In Transaero, the district court had held that a New York corporation properly effectuated service in an action to enforce a default judgment against the Bolivian Air Force. Id. at 149–150. On interlocutory appeal, the corporation acknowledged that it had not strictly complied with Section 1608(a), but asked the D.C. Circuit to "pronounce the attempted service sufficient because the Bolivian government received actual notice of the suit." Id. at 153. The D.C. Circuit found that "technically faulty" service that achieves actual notice can be excused under Section 1608(b), which concerns agencies or instrumentalities of foreign states, but not under Section 1608(a), which concerns foreign states themselves. Id. at 153–154. The court explained that the distinction is a vital and deliberate element of the statutory scheme, as "agencies or instrumentalities" are "typically international commercial enterprises" that "possess a sophisticated knowledge of the United States legal system that other organs of foreign governments may lack." Id. at 154. Moreover, the court noted that Section 1608(b) specifically includes a provision permitting "actual notice," while Section 1608(a) does not, and observed that "[t]he Committee Report [for FSIA] states that section 1608(a) 'sets forth the exclusive procedures for service on a foreign state,' but contains no such admonition for section 1608(b)." Id. As a result, the D.C. Circuit "h[e]ld that strict adherence to the terms of 1608(a) is required." Id.

█ Although the two other cases cited by ENPH were decided after Transaero, they still rely on Marlowe. In the first case, International Road Federation v. Embassy of the Democratic Republic of the Congo, the district court acknowledged Transaero's "strict adherence" test but nonetheless employed Marlow's "substantial compliance" standard, reasoning that "strict adherence to the [general notice] provision itself, which would not have resulted in notice to defendant, is not mandatory under these circumstances." 131 F.Supp.2d 248, 251–52 (D.D.C. 2001). In the second case, G.E. Transport S.P.A. v. Republic of Albania, the district court applied Marlow's "substantial compliance" standard without acknowledging Transaero at all, and thus had no trouble finding that a contract provision governing "[a]ny notice to be given" constituted a "special arrangement for service." 693 F.Supp.2d 132, 136–137 (D.D.C. 2010). In the Court's view, neither district court decision provides a compelling justification for departing from the controlling authority of the D.C. Circuit's "strict adherence" standard in this case. Applying that standard, ENPH fails to establish that the general notice provision of the PPA constitutes a "special arrangement for service."

Even if the Court were to accept that the broad notice provisions in the two district court cases decided after Transaero satisfied the "strict adherence" standard and constituted "special arrangement[s] for service" under Section 1608(a)(1), the more narrow notice provision in the PPA would still fall short. In G.E. Transport S.P.A., the notice provision covered "[a]ny notice to be given to [the foreign government.]" 693 F.Supp.2d at 136–137. In International Road Federation, the notice provision covered "[a]ll notices, demands, or requests between [the parties.]" 131 F.Supp.2d at 251. By contrast, the notice provision in the PPA only covers "notices

---

1. While Transaero's discussion of Section 1608(a) focuses mainly on subsections (3) and (4), its holding and reasoning applies to all of Section 1608(a). See id. at 153–54.

or other communications *required or permitted to be given hereunder.*" Pet. Ex. A. § 22 (emphasis added). In other words, while the notice provisions in the two cases cited by ENPH do not explicitly address legal service, they still could have constituted "special arrangement[s] for service" under the "strict adherence" standard because their sweeping language indicated that they were intended to cover any and all formal communications between the parties. Because the notice provision in the PPA is specifically circumscribed to communications "required or permitted" under the agreement—which would not include service of process—it still would not constitute a "special arrangement for service" under the "strict adherence" standard.

This conclusion is bolstered by the fact that other sections of the PPA explicitly contemplate legal service—a clear indication that the parties did not intend for the general notice provision to govern the topic. See Russell Brands, LLC v. GVD Int'l Trading, SA, 282 F.R.D. 21, 24 (D. Mass. 2012) (finding that a notice provision not clearly "intended to govern legal notice in the form of service of a complaint" but rather "to address the operation of the contract itself" does not constitute an agreement on how to effectuate legal service). Specifically, section 24 of the PPA—entitled "Law; Jurisdiction; Agents for Service"—states that each party "irrevocably agrees that any process may be sufficiently and effectively served on it in connection with proceedings in England and Wales by service on" agents listed in the document. Pet. Ex. A § 24.3. By contrast, the "Notices" provision relied upon by ENPH for service of the Petition does not reference legal process or agents for service whatsoever. Id. The parties' inclusion of a specific provision for legal service only in another jurisdiction indicates that they did not intend to create a "special arrangement for service" for proceedings in the

United States. Particularly in light of the "strict adherence" standard, this Court will not expand the parties' agreement by adopting an expansive reading of a general notice provision to include legal service when the parties have spelled out specific arrangements on the subject elsewhere in the same contract.

### B. Service by Alternative Method

■ Under Federal Rule of Civil Procedure 4(m), if a plaintiff does not properly serve a defendant within 120 days of filing a complaint but "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." The Court has substantial discretion in determining whether to extend the time for service. See Mann v. Castiel, 729 F.Supp.2d 191, 198 (D.D.C. 2010), aff'd, 681 F.3d 368 (D.C. Cir. 2012). ENPH's effort to serve Nigeria under Section 1608(a)(1) was arguably supported by caselaw in this district. Moreover, ENPH's attempted service under Section 1608(a)(1) was consistent with this Court's procedures, which require parties to exhaust the first method of service outlined in Section 1608(a) before making an attempt under a subsequent provision. Abur, 437 F.Supp.2d at 172. Consequently, the Court concludes that ENPH has met the "good cause" threshold.

The Court finds that permitting ENPH additional time to effect service by alternative means will not prejudice Nigeria, which appears to be using this action to relitigate and delay the payment of claims already resolved by the agreed upon arbitration procedure. See Haley v. Simmons, 529 F.2d 78, 79 (8th Cir. 1976) ("dismissal [is not] invariably required where service is ineffective: under such circumstances, the court has discretion to either dismiss the action, or quash service but retain the case"); see also Wright & Miller, § 1354

("The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant."). Nigeria clearly waived its sovereign immunity, Pet. Ex. A § 25 ("Waiver of Sovereign Immunity"), and its right to challenge any arbitration award, Pet. Ex. A § 23.3.5 ("The Parties further expressly waive, to the fullest extent permitted by applicable law, any right to challenge an award by the arbitrators anywhere outside the place of arbitration agreed herein."). Section 1608(a)(2), which is triggered by "an applicable international convention on service of judicial documents," does not govern this matter because Nigeria is not a signatory to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service Convention"). As a result, the Court will permit ENPH to proceed under Section 1608(a)(3), "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."

### III. Conclusion

For the reasons explained above, it is hereby

**ORDERED** that Nigeria's Motion to Quash Service and Dismiss Petition [Dkt. No. 13] is granted in part and denied in part. It is further

**ORDERED** that ENPH's Alternative Request for Stay to Accomplish Service [Dkt. No. 20] is **GRANTED** to the extent it requests additional time to serve by alternative means. No "stay" of the case in necessary to grant the relief sought. It is further

**ORDERED** that Petitioner shall effectuate service on Respondent pursuant to 28 U.S.C. § 1608(a)(3) within 120 days of this Order. Petitioner shall comply with the U.S. District Court for the District of Columbia's "Procedures for Service Under 28 U.S.C. § 1608(a)(3)." Attorney Manual for Service of Process on a Foreign Defendant, U.S. District Court for the District of Columbia, 9–10 (Revised: April 2014), http://www.dcd.uscourts.gov/dcd/sites/dcd/files/AttyManualForeignMlg2014wattach.pdf.

**SO ORDERED.**