[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14661
_____

D.C. Docket No. 1:13-cv-20639-CMA


SOORAJNINE SINGH,
as Next Friend for Rovin Singh,
CYNDIANA SINGH,
as Next Friend for her minor
children J.S., V.S., Jy.S., and Ve.S.,

                              Plaintiffs - Appellants,

versus

CARIBBEAN AIRLINES LIMITED,

                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 20, 2015)

Before MARCUS and WILSON, Circuit Judges, and THAPAR,[*] District Judge.

WILSON, Circuit Judge:

Caribbean Airlines, Ltd. (CAL) is an international airline based in the Republic of Trinidad and Tobago (Trinidad and Tobago), and is Trinidad and Tobago's national carrier.  It is majority-owned by the Minister of Finance of Trinidad and Tobago (Minister).  In this appeal, we consider whether CAL qualifies for jury immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, in a negligence action by Rovin Singh.  Rovin Singh, on his own behalf and as next friend for his minor children, originally filed his complaint in state court, and it was later removed to the Southern District of Florida.[1]  CAL moved the district court to strike Singh's jury demand, citing 28 U.S.C. § 1441(d).  The district court granted the motion and, after a bench trial in which it found that CAL was not negligent, entered judgment in CAL's favor.  Singh appeals that judgment and the underlying order granting the motion to strike.  Applying the plain language of the FSIA, we find no error in the district court's determinations.

---

[*] Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] The district court found, under Rule 17 of the Federal Rules of Civil Procedure, that Rovin was not competent to prosecute the litigation.  Accordingly, it appointed his sister, Soorajnine Singh, as next friend for Rovin, and it appointed the mother and natural guardian of his children, Cyndiana Singh, as next friend for Rovin's minor children.  For ease of reference, when referring to Plaintiffs-Appellants collectively, we will simply refer to "Singh," which will double as a reference to Rovin Singh individually.

I.

Singh suffered a stroke on December 15, 2011, while on board CAL Flight BW 484. He filed a complaint against CAL in Florida's Eleventh Judicial Circuit. CAL removed the controversy to the District Court for the Southern District of Florida. Singh is a Florida resident. CAL, organized under the laws of the Trinidad and Tobago, is also based in that country. The Minister owns 84 percent of CAL's stock. The Minister is a corporation sole[2] likewise organized under Trinidadian law, specifically the Minister of Finance (Incorporation) Act. The Minister is also responsible for "all financial or fiscal matters of" Trinidad and Tobago, including administering the Ministry of Finance of Trinidad and Tobago (Ministry). Furthermore, the Minister holds and administers the state's property.

Singh filed an amended complaint in the district court. The amended complaint included a jury demand, which CAL moved to strike. CAL claimed it qualified as a "foreign state" as defined in the FSIA, *see* 28 U.S.C. § 1603(a), and asserted its immunity from a jury trial, *see id.* § 1441(d). The district court agreed. It applied a "core functions" test and concluded that the Minister should be considered a "political subdivision" of Trinidad and Tobago, unless it was a legal entity separate from the government of Trinidad and Tobago. The district court

[2] A corporation sole is "[a] series of successive persons holding an office; a continuous legal personality that is attributed to successive holders of certain monarchical or ecclesiastical positions." Black's Law Dictionary 416 (10th Ed. 2014). As discussed herein, the Minister was created to perform governmental functions without disruption due to a change of officeholder.

3

held that it was not. Consequently, CAL qualified as an "agency or instrumentality" of a foreign state, which entitled it to a bench trial under the FSIA. The matter proceeded to a bench trial, at the conclusion of which the district court found that CAL had not acted negligently under applicable law and entered final judgment in CAL's favor. This appeal followed.

## II.

As a general matter, the FSIA standardizes the sovereign immunity of foreign states. *See id.* § 1604. That general rule has exceptions. *See id.* §§ 1605–07. Still, a foreign state is granted immunity from jury trials and is entitled to a bench trial should such an exception apply. *See id.* § 1441(d). "A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." *Id.* § 1603(a). Subsection (b) defines an "agency or instrumentality of a foreign state" to include "any entity . . . a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." *Id.* § 1603(b) (internal quotation marks omitted). Thus, an agency or instrumentality of a political subdivision of a foreign state may be treated as a foreign state for purposes of § 1441(d).

At first glance, it may seem that majority ownership by an agency or instrumentality, which would be deemed a foreign state under the FSIA, would make the subsidiary itself an agency or instrumentality, and thus, a foreign state

4

under the FSIA.  However, Supreme Court precedent squarely forecloses any such "corporate tiering" theory whereby a corporate subsidiary could claim foreign state status under the FSIA because its parent is majority-owned by a foreign state.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 473–78, 123 S. Ct. 1655, 1659–62 (2003) ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares.").  In that opinion, the Court affirmed the Ninth Circuit's rejection of the contention that agency or instrumentality status of a parent confers the same status on a majority-owned subsidiary.  *See id.* at 473, 123 S. Ct. at 1659 ("The Court of Appeals resolved the question of the FSIA's applicability by holding that a subsidiary of an instrumentality is not itself entitled to instrumentality status.  Its holding was correct."); *accord Filler v. Hanvit Bank*, 378 F.3d 213, 216–20 (2d Cir. 2004).

Singh argues that *Dole Food* settles this appeal.  The Ministry is a political subdivision of Trinidad and Tobago.  The Minister, as a corporate subsidiary of the Ministry, is an agency or instrumentality of Trinidad and Tobago.  Under *Dole Food* and *Filler*, the FSIA's protections stop there; any interest the Minister owns in CAL does not confer on CAL agency or instrumentality status that would entitle it to the immunities of a foreign state under the FSIA.  CAL points out that, though a subsidiary of an agency or instrumentality is not entitled to foreign state immunity under the FSIA, the Minister is not an agency or instrumentality; it is a

5

political subdivision of Trinidad and Tobago.  Majority-owned subsidiaries of political subdivisions are themselves entitled to foreign state status under the FSIA.

Singh does not object to this last assertion, as the FSIA clearly and unambiguously supports it.  *See* § 1603(b)(2)  ("An 'agency or instrumentality of a foreign state' means any entity . . . a majority of whose shares or other ownership interest is owned by a foreign state *or political subdivision thereof . . . .*" (emphasis added)).  Singh only disputes the Minister's characterization as a political subdivision of Trinidad and Tobago.  Accordingly, we must only decide whether the Minister is a political subdivision of Trinidad and Tobago.  Because we conclude that the district court correctly held that the Minister is a political subdivision of Trinidad and Tobago, CAL qualifies as an agency or instrumentality of Trinidad and Tobago, and the district court's strike of Singh's jury demand was not erroneous.  We therefore affirm the order and the final judgment.

### A.

Whether CAL qualifies for jury immunity under the FSIA is a question of law.  We therefore review the district court's order striking Singh's jury demand de novo.  *See Waldrop v. S. Co. Servs., Inc.*, 24 F.3d 152, 155 (11th Cir. 1994); *see also Venus Lines Agency v. CVG Industria Venezolana De Alumnio, C.A.*, 210 F.3d 1309, 1311 (11th Cir. 2000) (reviewing FSIA immunity question de novo).

B.

We first must decide what test to apply to decide whether the Minister is a political subdivision.  The other Circuits that have decided this question have applied the "core functions" test that the district court applied here.  *See Garb v. Republic of Poland*, 440 F.3d 579, 593–94 (2d Cir. 2006); *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 214–15 (4th Cir. 2011); *Magness v. Russian Fed'n*, 247 F.3d 609, 613 n.7 (5th Cir. 2001); *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007), *rev'd on other grounds sub nom. Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 129 S. Ct. 1732 (2009); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).

The core functions test asks "whether the core functions of the foreign entity are predominantly governmental or commercial."  *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994).  The rationale behind this test is based largely on the FSIA's purpose of standardizing federal courts' jurisdiction over the commercial activities of foreign states.  *See* 28 U.S.C. § 1602; *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611, 112 S. Ct. 2160, 2164 (1992) ("The most significant of the FSIA's exceptions [to the sovereign immunity of foreign states] . . . is the 'commercial' exception of § 1605(a)(2) . . . .").  The

7

lesser protections the FSIA offers to agencies or instrumentalities of foreign states reflect the significance of its distinction between traditional governmental activities and commercial activities. *See* 28 U.S.C. § 1606 ("[A] foreign state *except for an agency or instrumentality thereof* shall not be liable for punitive damages . . . ." (emphasis added)); *id.* § 1610(a)–(b), (d) (limiting execution against property owned by foreign states to property "used for a commercial activity"). The distinction is appropriate because the FSIA repealed sovereign immunity for commercial activity while preserving the same for inherently governmental functions. *See Transaero*, 30 F.3d at 151–52. Moreover, Singh does not object to the test. We therefore adopt the core functions test as the appropriate standard for determining whether an entity qualifies as a political subdivision of a foreign state.

## C.

The Minister's core functions are governmental. Based on factual findings that the Minister conducts much of the financial, fiscal, and administrative functions for Trinidad and Tobago and the Ministry, and that the Minister is responsible for holding and administering Trinidad and Tobago's property, the district court held that the Minister "is part of the Ministry" and, accordingly, a political subdivision of Trinidad and Tobago. We discern no clear error in the factual findings and agree with the district court's ultimate conclusion. These functions are plainly governmental in nature. *See Garb*, 440 F.3d at 594–98

(holding that the core function of "hold[ing] and administer[ing] the property of the [foreign] state[ was] indisputably governmental" (internal quotation marks omitted)).  The district court further found that the Minister contracts and incurs liabilities on behalf of Trinidad and Tobago.

Additional considerations support the district court's determination.  A Deputy Permanent Secretary within the Ministry affirmed under oath that the Minister "is appointed by the President in accordance with the provisions of the Constitution of Trinidad and Tobago."  According to her, the Minister also "is a member of the Cabinet which, pursuant to the Constitution of Trinidad and Tobago, is responsible for the general direction and control of the Government of Trinidad and Tobago."  Furthermore, a Trinidadian lawyer who is also a former High Court Judge of the Supreme Court of Trinidad and Tobago stated that the Minister "is part of or an arm (as opposed to an agent) of the government" of Trinidad and Tobago in his sworn affidavit.

Singh contends that the Minister's creation by the Minister of Finance (Incorporation) Act and the fact that it is organized as a corporation sole do not distinguish this case.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S. Ct. 2591, 2600 (1983) ("[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.").  We first

9

note that separate legal identity does not foreclose political subdivision status. With that in mind, record evidence that the Minister "is not incorporated under the laws of Trinidad and Tobago for the purpose of carrying on a trade or business for gain and, as 'corporate sole,' is expressly excluded from the definition of a 'body corporate' under" Trinidad and Tobago's law governing private companies weighs in favor of governmental status and against commercial status.

Furthermore, to the extent that *Dole Food* holds that corporate subsidiaries are not entitled to agency or instrumentality status, that case does not accommodate the circumstances here. There, the Court did not have to consider whether the corporate parent was itself a political subdivision because the subsidiaries did not so argue.[3] In fact, the Court described the corporate parent directly owned by the foreign state as an instrumentality. *See Dole Food*, 538 U.S. at 473, 123 S. Ct. at 1659 (expressly agreeing with the Ninth Circuit's holding characterizing the corporate parent as an instrumentality). Here, CAL has squarely argued that the Minister, the analogue of *Dole Food*'s corporate parent, is a political subdivision. As discussed *supra*, we agree with that characterization.

---

[3] It seems that the reason for this is the nature of the corporate parent. The Court's opinion in *Dole Food*, like the Ninth Circuit's opinion in that case, does not offer much detail on the nature of the corporate parent and intermediary entities, but judging solely by their names, they performed commercial, not governmental, functions, removing them from consideration as political subdivisions under the core functions test.

10

## III.

For the foregoing reasons, we affirm the district court's order striking the jury demand and affirm the final judgment.

**AFFIRMED.**